Leonard J. ASSELIN, Jr.,
Plaintiff Pro Se,

v.

SHAWNEE MISSION MEDICAL
CENTER, INC., et al.,
Defendant.

Civ. A. No. 94–2505–KHV.

United States District Court,
D. Kansas.

Oct. 25, 1995.

Leonard J. Asselin, Jr., Prairie Village, KS, pro se.

Sally H. Harris, Patrick E. McGrath, John M. Graham, Jr., Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for Shawnee Mission Medical Center, Inc.

Janet M. Simpson, Holbrook, Heaven & Fay, P.A., Kansas City, KS, for Seventh–Day Adventists Church.

Philip R. Dupont, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for Steven J. Hess.

Phillip P. Ashley, M. Warren McCamish, Williamson & Cubbison, Kansas City, KS, for Gregory Rick, Jr.

Sally H. Harris, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for Mid–America Union Conf. of Seventh–Day Adventists.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on the *Motion to Dismiss* (Doc. # 90) filed by Steven Hess, M.D. on September 13, 1995. For reasons stated below, the Court finds that said motion must be overruled.

### Plaintiff's Complaint and Amendments Thereto

Plaintiff's claim against Dr. Hess is as follows:

Dr. Hess was plaintiff's attending neurosurgeon at Shawnee Mission Medical Center. Dr. Hess is a place of public accommodation under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and other federal statutes, and he receives federal funds through various programs, including Hill–Burton, Medicare, Medicaid and C.H.A.M.P.U.S.

On December 10, 1992, plaintiff (who was then 56 years of age) fell from a one-story roof and was transported by ambulance to SMMC. Plaintiff was in a great deal of pain and he was hospitalized from December 10, 1992 until January 1, 1993, for an acute compression fracture of his back.

Plaintiff has suffered from epilepsy, a disabling seizure, since an accident in his teenage years. Plaintiff controls the seizures through medication, *i.e.* 200 mg. of Dilantin in the morning plus 100 mg. of Dilantin and 60 mg. of phenobarbital at bedtime. In the emergency room on December 10, 1992, plaintiff disclosed his medical condition, including his epilepsy, along with his current medications and their dosages. At that time, plaintiff also executed a consent to hospital and medical treatment. The consent form embodied a representation that "my doctor will explain to me ... his recommended treatment and any associated risks involved." Dr. Hess did not advise plaintiff of any treatment risk with respect to the medications which he administered, nor did he supply plaintiff written information concerning his rights as a patient. Also, Dr. Hess did not test plaintiff's blood levels of Dilantin and phenobarbital in the emergency room. As a result, Dr. Hess had no "benchmark" for administering additional medications.

Initially, Dr. Hess wanted to perform a fusion operation on plaintiff's back. Plaintiff demanded a second opinion, however, and in the end the agreed treatment was three weeks of bed rest. Plaintiff was cautioned that a chip of his backbone was resting against his spinal column, and that his movements should be restricted to "log rolling" from side to side.

While plaintiff was in the hospital, Dr. Hess forced him to take various medications which were inappropriate for epileptics. One such drug was Metoclopramide, also known as Reglan, an antipsychotic drug which severely and permanently affects an individual's ability to think and communicate. At approximately 9:30 a.m. on the morning of December 24, 1992, after almost two weeks of being medicated with Reglan and other prescription medications, plaintiff experienced the "aura" which precedes an epileptic seizure. He immediately reported this sensation to hospital nurses. Plaintiff also questioned whether he had received his maintenance medications the preceding night, and asked that his blood levels be checked. Notwithstanding repeated requests and complaints, Dr. Hess refused to modify his policy

and test plaintiff's blood. Meanwhile, plaintiff lay in total fear, knowing that a seizure could move the bone chip laying next to his spinal cord because seizures cause him to arch his back.

At approximately 2:00 p.m., after four hours of begging and pleading for a blood test, plaintiff suffered a grand mal seizure in the presence of his son and the nurses he had summoned to his bedside. Although certain forms of grand mal seizures can be life-threatening, plaintiff's seizure lasted only two to three minutes and nurses treated it by placing plaintiff on his side, surrounded by pillows. Blood tests conducted immediately after the seizure revealed that plaintiff's Dilantin level was low and his phenobarbital level was sub-therapeutic.

After the seizure, plaintiff asked Dr. Hess whether the in-hospital medications had anything to do with his seizure. Dr. Hess replied that plaintiff's liver was at fault. Plaintiff "first became inquisitive" about the in-hospital medications in November, 1993, when he saw a private neurologist. On or about November 28, 1994, plaintiff purchased a copy of his SMMC medical records and began to realize that some of his medications had warnings and serious side effects. In December, 1994, while visiting someone at the University of Kansas Medical Center, plaintiff also realized that SMMC had not provided him the *Patients Bill of Rights* or other printed literature on patient rights.

SMMC released plaintiff on January 1, 1993, but readmitted him for x-rays on January 14, 1993. After plaintiff was discharged but while he was still taking his prescribed medications in January, 1993, he suffered another seizure.

Plaintiff seeks $25,000 damages plus injunctive relief for defendant's failure to comply with the Americans with Disabilities Act, § 301(7)(J), 42 U.S.C. § 12181(7)(J).

### Defendant's Motion to Dismiss

■ In deciding motions to dismiss, the Court must accept plaintiff's allegations as true and construe them in the light most favorable to plaintiff. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir.1991). With a *pro se* case, the court affords a plaintiff more leniency and must liberally construe the complaint. *See Oltremari v. Kansas Social & Rehabilitative Service*, 871 F.Supp. 1331, 1333 (D.Kan.1994).

Plaintiff claims that Dr. Hess discriminated against him on the basis of disability (epilepsy), in that he (1) failed to establish a therapeutic level with respect to plaintiff's maintenance medication; (2) forcibly administered Reglan without informing plaintiff of the manufacturer's published adverse reactions and warnings; (3) subjected plaintiff to unnecessary and inappropriate treatment and medication, *i.e.* antipsychotic drugs for a fractured back; (4) refused to modify hospital policy and check plaintiff's blood level upon reasonable request; and (5) failed to provide plaintiff a copy of the *Patient's Bill of Rights.*

Plaintiff filed his initial complaint against Dr. Hess on February 10, 1995. See *First Amended Complaint of Medical Negligence* (Doc. # 12). Plaintiff attempted service by regular (rather than certified) mail, and the Court therefore quashed service. In response, plaintiff on March 20, 1995, sent by certified mail, as required by Rule 4 of the Federal Rules of Civil Procedure, a Notice of Lawsuit and Request for Waiver of Service of Summons. Dr. Hess did not waive service, however, and plaintiff obtained personal service of his *Second Amended Complaint* on August 15, 1995.

Dr. Hess argues that plaintiff's second amended complaint is barred by the statute of limitations because (1) plaintiff had epileptic seizures in December, 1992 and January, 1993; (2) the applicable statute of limitations is two years, as provided in K.S.A. § 60–513(a)(7); and (3) the statute therefore ran in January, 1995 at the latest. Plaintiff argues that the statute did not start running until November 28, 1994, when he acquired actual knowledge that his damages had been caused by Dr. Hess' violation of the ADA. See K.S.A. § 60–513(c).

■ Defendant's motion is ill taken, and must be overruled on the present record. First, while K.S.A. § 60–513(a)(7) generally imposes a two-year statute of limitations, if the fact of injury is not reasonably ascertain-

able until some time after the act giving rise to the cause of action, the cause of action shall not be deemed to have accrued until the fact of injury becomes "reasonably ascertainable to the injured party." K.S.A. § 60–513(c). Thus the relevant question is when the fact of injury became reasonably ascertainable to plaintiff.

 Dr. Hess apparently contends that the fact of injury was reasonably ascertainable in December, 1992 or January, 1993, when plaintiff experienced his seizures. Dr. Hess styles his motion a motion to dismiss, however, and approaching it from that standpoint, we are required to take as true plaintiff's allegations that (1) Dr. Hess deceived plaintiff into believing that the in-hospital medications had nothing to do with his seizure; (2) plaintiff "first became inquisitive" about the in-hospital medications in November, 1993, when he saw a private neurologist; and (3) before November 28, 1994, when plaintiff purchased a copy of his SMMC medical records, he had not begun to realize that some of his medications had warnings and serious side effects.

 "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983). In reviewing a Rule 12(c) motion, the court assumes the veracity of plaintiff's "well-pleaded factual allegations" and draws all reasonable inferences in plaintiff's favor. *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir.1987); *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

 "Fact of injury" refers to the point in time when plaintiff knew or should have known he had an injury caused by defendant's acts or omissions. *See Gilger v. Lee Construction, Inc.*, 249 Kan. 307, 322, 820 P.2d 390, 401 (1991). On this record, taking all of plaintiff's relevant allegations as true, the Court cannot find that the fact of plaintiff's injury was reasonably ascertainable by January, 1993. Kansas cases have been quick to find a material issue of fact as to when the fact of injury became reasonably ascertainable, and on this record the Court is compelled to do likewise.

 Although defendant's motion depends upon matters outside the pleadings, the Court declines to treat it as a Rule 56 motion for summary judgment.[1] *See* Fed.R.Civ.P. 12(c); *see also Gaines v. Ski Apache*, 8 F.3d 726, 728 n. 2 (10th Cir.1993). Dr. Hess has not presented his statute of limitations defense in accordance with D.Kan.Rule 206. Until he does so, the Court declines to further consider the issue.

IT IS THEREFORE ORDERED that the *Motion to Dismiss* (Doc. # 90) filed by Steven Hess, M.D. on September 13, 1995, be and hereby is overruled.

---

1. When a court determines that it must treat a motion to dismiss or for judgment on the pleadings as one for summary judgment under Rule 56, the parties are entitled to notice and a reasonable opportunity to provide additional material before the court determines the outcome. *See* Fed.R.Civ.P. 12(b) and (c); *Wheeler v. Hurdman* 825 F.2d 257, 260 (10th Cir.1987), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987); *Nichols v. United States*, 796 F.2d 361, 364 (10th Cir.1986).