**Wayne SOIGNIER, Plaintiff–Appellant,**

v.

**AMERICAN BOARD OF PLASTIC SURGERY, Defendant–Appellee.**

No. 96–1255.

United States Court of Appeals, Seventh Circuit.

Argued June 5, 1996.

Decided Aug. 12, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 19, 1996.

Gerardo S. Gutierrez, Chicago, IL, Charles E. Baruch (argued), Abbott & Baruch, Rowlett, TX, for Wayne Soignier.

Douglas R. Carlson (argued), Frederick L. Schwartz, Wildman, Harrold, Allen & Dixon, Chicago, IL, for American Bd. of Plastic Surgery.

Before COFFEY, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

A plastic surgeon claims certain disabilities prevented him from passing the oral portion of a board certification examination. On his fifth attempt the American Board of Plastic Surgery gave him extra time to complete the test and allowed him to use demonstrative aids. He still did not pass. The surgeon pursued an internal appeal of this failure and the denial of some of his requested accommodations, which the Board denied. He then sued the Board alleging the accommodations offered him failed to satisfy Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189 ("ADA"). Because his cause of action accrued when he took the test without the accommodations he requested, and because his internal appeal did not stay the statute of limitations, the district court properly dismissed his case as barred under the applicable limitations period.

## I.

Board certification is a critical mark of professional medical competence. Dr. Wayne Soignier, a plastic surgeon from Dallas, Texas, passed the written portion of his board certification exam in 1983, but did not pass the oral portion after four attempts. According to the American Board of Plastic Surgery's rules, applicants for board certification may take the oral exam only five times. If not successful they must complete an additional year of training in a plastic surgery residency before reapplying. Soignier's diligence in seeking certification is understandable: besides the professional prestige associated with board certification, many health maintenance and preferred provider organizations refuse to contract with non-board certified plastic surgeons. Over half of Soignier's potential patients are related either to an HMO or a PPO.

The next oral exam scheduled for November 1992 would be his last chance (unless he completed additional training). For that exam Soignier asked the Board to accommodate his disabilities, which he says include an attention deficit disorder, difficulty processing and expressing information due to an "auditory processing disability," and dyslexia. Soignier requested more time to take the test, use of models and paper drawings during the test, time to rephrase questions or rewrite them if necessary, and different ex-

aminers than those who had administered his past tests. The Board did not accede to all of his requests, but did give him extra time to complete each session and allowed him to explain his answers using demonstrative aids. Even with these accommodations, he did not pass the orals on this fifth try.

Soignier then pursued a voluntary internal appeal before the Board. He also sought another oral exam with additional accommodations. On May 13, 1993, the Board alerted him that "the circumstances of this examination were as accommodating as could be structured" and that he would not be given another chance to take the orals. In November 1994 the Board denied his internal appeal. It upheld the test result and found that the November 1992 examination had been conducted fairly.

On May 9, 1995, Soignier sued the Board alleging that the accommodations offered him did not satisfy 42 U.S.C. § 12189 of the ADA, which mandates that professional certification examinations be offered in a place and manner acceptable to the disabled. His complaint alleged that his failure to pass the oral exam "is not surprising, in that it is presented in a format particularly inappropriate for a physician with a learning disability." He asserted the Board's modifications at the November 1992 test "were largely illusory" and "woefully insufficient." [1]

The Board moved to dismiss Soignier's complaint as time-barred. The parties agreed that Illinois' two-year statute of limitations period for personal injury actions applied.[2] Ill.Stat. ch. 735, para. 5/13–202 (1993). The district court found that Soignier discovered his claimed injury in November 1992, as evidenced by the allegations in his complaint. It reasoned that the internal appeal process was used to remedy past wrongs and to review his request for a retest, and therefore did not constitute a new wrong

extending the accrual date. Because Soignier's claim accrued in November 1992, but he did not file his complaint in federal court until May 1995, the district court dismissed this suit as time-barred pursuant to Fed. R.Civ.P. 12.

■ We review *de novo* the district court's dismissal order. *Jones v. General Elec. Co.,* 87 F.3d 209, 211 (7th Cir.1996); *Thelen v. Marc's Big Boy Corp.,* 64 F.3d 264, 267 (7th Cir.1995). We accept all allegations properly pleaded in the complaint and make reasonable inferences in the doctor's favor. *Jones, id.; see Graehling v. Village of Lombard, Illinois,* 58 F.3d 295, 297 (7th Cir.1995).

## II.

Soignier argues that the district court erred when it dismissed his suit as untimely because the Board engaged in a continuous course of conduct which extended the accrual date of his claim and because the limitations period should have been tolled during the internal appeal. As backup, the surgeon contends that the statute of limitations should be equitably tolled, and that the Board is equitably estopped to assert the limitations period as an affirmative defense.

### A. Choice of Statute of Limitations

■■ The ADA, like many federal civil rights statutes, does not contain a specific statute of limitations. Thus, the most appropriate state limitations period applies. 42 U.S.C. § 1988(a); *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985). *Wilson* dictates a three-step borrowing analysis: if no federal law provides a limitations period (step 1), the common law as modified by state statute is to be applied (step 2), but only if it is not inconsistent with the Constitution and laws of the United States (step 3). Under step 2,

1. The district court had federal question jurisdiction because the surgeon alleged a violation of 42 U.S.C. § 12189, as well as diversity jurisdiction because the surgeon is a Texas citizen, the Board is a corporation incorporated in the state of Illinois with its principal place of business in Pennsylvania, and the amount in controversy exceeds $50,000. This court properly has jurisdiction pursuant to 28 U.S.C. § 1291 because the district court's January 5, 1996 dismissal order is

a final order and the surgeon timely filed his notice of appeal on January 31, 1996.

2. Soignier's claims arose "substantially within" the Northern District of Illinois, and thus satisfy the venue requirement of 28 U.S.C. § 1391, as the Board is an Illinois corporation and heard Soignier's internal appeal in Chicago.

courts are to select the statute of limitations of the state cause of action "most appropriate" or "most analogous" to the plaintiff's claim. *See, e.g., Owens v. Okure,* 488 U.S. 235, 239, 109 S.Ct. 573, 576, 102 L.Ed.2d 594 (1989); *Burnett v. Grattan,* 468 U.S. 42, 47–48, 104 S.Ct. 2924, 2928–29, 82 L.Ed.2d 36 (1984).

■ The statute Soignier invokes in Title III of the ADA prohibits discrimination by a private entity offering a professional certification examination. We agree with the parties that this claim is best characterized as one for personal injury. *See, e.g., Goodman v. Lukens Steel Co.,* 482 U.S. 656, 661, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987) (action for discrimination is one for "fundamental injury to the individual rights of a person"); *Wilson,* 471 U.S. at 280, 105 S.Ct. at 1949 (claims which allege discrimination are best characterized as personal injury actions). The district court thus correctly applied Illinois' two-year statute of limitations for personal injuries as the most analogous limitations period for Soignier's ADA claim.[3]

### B. Application of Statute of Limitations

Although the parties agree which limitations period applies, they dispute when it began to run. The district court concluded that an ADA claim such as Soignier's under 42 U.S.C. § 12189 accrues when a covered entity refuses to offer an examination in a manner accessible to an otherwise qualified disabled American. In his complaint Soignier alleges that in November 1992 he was disabled but that the Board refused him suf-

ficient test-taking accommodations for his disabilities. [Dist. Ct. Opinion pp. 3–5] Because the elements of an ADA claim were present when Soignier took his orals for the fifth time in November 1992, the district court reasoned that the two-year limitations period began to run then. The court concluded therefore that the complaint filed in May 1995 was untimely.

■ On appeal, Soignier argues that the Board engaged in a "continuous course of conduct" against him. To Soignier, the Board's unlawful conduct under the ADA only began with the fifth oral exam in November 1992, continued with the Board's refusal to retest him in May 1993, and did not end until its denial of his internal appeal and refusal to provide testing with the accommodations he requested in November 1994. He asserts that the earliest his claim could have accrued was May 13, 1993, when the Board refused to retest him, and more probably the period did not begin to run until that continuous course of conduct ended in November 1994. The dismissal order is incorrect, Soignier submits, because he filed suit within two years of either of these dates.

■ The law and reason support the district court's decision. *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and its progeny in this circuit dictate that discovery of the original act of discrimination, *not* future confirmation of the injury or determination that the injury is unlawful, is when the statute of limitations begins to run. *Id.* at 258, 101 S.Ct. at 504. *See, e.g., Kennedy v. Chemical Waste Mgmt.,*

---

**3.** Dr. Soignier claims violation of a statute enacted as part of Title III of the ADA. The cases in which district courts in this circuit considered this question both involved claims under Title II of the ADA. *Piquard v. City of East Peoria,* 887 F.Supp. 1106, 1112 & n. 1 (C.D.Ill.1995) (applying Illinois' two-year statute of limitations to ADA claim); *Doe v. County of Milwaukee,* 871 F.Supp. 1072, 1077–78 (E.D.Wis.1995) (applying Wisconsin's six-year limitations period for "injury to character or other rights" to ADA claim). Other district courts, correctly, have not distinguished between Titles II and III in borrowing state limitations periods. *See, e.g., Asselin v. Shawnee Mission Medical Center, Inc.,* 903 F.Supp. 1454, 1456 (D.Kan.1995) (applying Kansas' two-year statute of limitations for personal injuries to Title III ADA claim), and *Doukas v.*

*Metropolitan Life Ins. Co.,* 882 F.Supp. 1197, 1199–1200 (D.N.H.1995) (applying New Hampshire's three-year general personal injury statute of limitations to Title III ADA claim). Title II of the ADA, 42 U.S.C. § 12131 *et seq.,* prohibits discrimination by public entities on the basis of disability. Title III of the ADA, 42 U.S.C. § 12181 *et seq.,* prohibits discrimination by public accommodations on the basis of disability, and requires places of public accommodation and commercial facilities to be designed, constructed, and altered in compliance with accessibility standards. As would be expected when two statutes share the same purpose, the three-step borrowing analysis under § 1988(a) has the same result: the choice of a state personal injury statute of limitations.

*Inc.,* 79 F.3d 49, 50 (7th Cir.1996) (deprivation of employee benefit was injury that set statute of limitations running in ADA action, even though injury was contingent); *Thelen,* 64 F.3d at 267 (injury discovered when controller informed employee he would be terminated; statute of limitations began to run on that date); *Graehling,* 58 F.3d at 297 (7th Cir.1995) (separation at a time established by an earlier decision not a fresh act of discrimination; only original decision to let employee go subject to ADA); *Palmer v. Bd. of Educ.,* 46 F.3d 682, 685–86 (7th Cir.1995) ("Like punching someone in the nose, this act may lead to injury in the future, but when there is only one wrongful act the claim accrues with the first injury.") Put another way, "[t]ime starts to run with 'the *discriminatory act,* not the point at which the *consequences* of the act become painful.'" *Lever v. Northwestern Univ.,* 979 F.2d 552, 553 (7th Cir. 1992) (emphasis in original, quoting *Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 661 (1993)); *see also Conner v. Reckitt & Colman, Inc.,* 84 F.3d 1100, 1102 (8th Cir.1996) (statute of limitations for ADA claim begins to run at time of discriminatory act, not when act's consequences become most painful); *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 449–50 (7th Cir.1990) (statute of limitations in age discrimination in employment case began to run when plaintiff discovered injury, not date on which "full consequences of action" became clear), *cert. denied,* 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991).

Under this law, the district court correctly ruled that the two-year statute of limitations began to run in November 1992 when the Board administered the oral exam for the fifth and final time. The complaint alleges that when Soignier completed the orals in November 1992, he was aware that the Board had conducted the test without the accommodations he allegedly deserved. Soignier claims that at that time, he was disabled and otherwise eligible to take the orals, but that the Board refused him reasonable accommodations for his disability. These are each of the elements of an ADA claim. *See, e.g., D'Amico v. New York State Bd. of Law Examiners,* 813 F.Supp. 217, 221 (W.D.N.Y.1993) (listing elements of ADA claim for suit by visually disabled state bar applicant).

In May 1993, the Board refused to grant Soignier an extra attempt to pass the orals. In November 1994, the Board affirmed its November 1992 test-taking procedures and refused to void the 1992 results. "An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination." *Lever,* 979 F.2d at 556. *Ricks* and the cases delineated above so hold. The events of May 1993 and November 1994 are "future confirmation" or "consequential" of the surgeon's alleged injury. These actions do not constitute new, separate discriminatory acts actionable under the ADA. Rather, they are part of the harm that continued to flow to the surgeon as a result of the Board's administration of the November 1992 test. Accordingly, the district court properly concluded that the Board's actions after November 1992 did not constitute new acts of discrimination, and thus that the limitations period expired in November 1994, roughly six months before Soignier filed suit.

In support of his "continuing violation" theory, Soignier relies heavily on *Beck v. Univ. of Wis. Bd. of Regents,* 75 F.3d 1130 (7th Cir.1996), in which this court ruled that the responsibility for requesting an accommodation rests with an ADA plaintiff, but that an "interactive process" is necessary to determine what if any accommodations are reasonable and will be provided. *Id.* at 1135–37. He argues that the point for accrual of a claim should be when this interactive process between the parties breaks down, which according to him was at the earliest May 13, 1993, when the Board refused to grant him a sixth attempt at passing the oral examination. Soignier maintains this is the only approach consistent with the ADA and this court's decision in *Beck.* He submits that an accrual date before May 1993 would require ADA plaintiffs to file prophylactic suits.

The law and the facts do not support this argument. In *Beck,* this court recognized that the party responsible for the breakdown in the "interactive process" in determining

the reasonableness of a disability accommodation would be liable under the ADA. 75 F.3d at 1136–37. *Beck* does not stand for the proposition that the limitations period begins to run at the date of such a breakdown. Rather, the facts of this case under the controlling law allow for only one "discovery" date for the statute of limitations: November 1992. All parties understood then that Soignier was disabled. The absence and reasonableness of certain requested accommodations at the November 1992 test would be at issue if this case went to trial. Moreover, discovery in November 1992 would not require a prophylactic suit. It is undisputed that the doctor knew at the last oral exam that he had not received all of the accommodations he requested. This failure is the allegedly discriminatory act which allowed Soignier to go on the offensive and file his complaint.

■ Soignier also asserts the limitations period should have been tolled during his internal appeal. This contention is contrary to *Ricks* and the law cited above. Rather than an independent wrong, the denial of the surgeon's appeal merely confirmed the Board's earlier decisions that sufficient accommodations had already been made for his disabilities and that he would not be retested. Soignier engaged the Board's internal appeals process in an attempt to reverse the Board's decisions to offer limited accommodations at the November 1992 test and not to offer a sixth test. But "an employer's refusal to undo a discriminatory decision is not a fresh act of discrimination." *Graehling*, 58 F.3d at 297. An employee's pursuit of an internal grievance procedure does not affect the date on which his claim accrued. Unlike an EEOC investigation (ending with a right to sue letter), internal appeals are not part of the ADA statutory procedure and do not toll the time for filing suit. *See Lever*, 979 F.2d at 556 (citing *Ricks* and *Chardon*). Because there is no first obligation to pursue administrative remedies, Soignier had to file suit within two years of the accrual date even if he had not exhausted all possible internal remedies. His internal appeal was only an added forum—an opportunity to get two bites at the apple.

Soignier's argument could possibly have been strengthened had he framed it as one of pure ripeness: he knew in November 1992 that his rights had been abridged, but with the internal appeal pending he had yet to find out whether that was the Board's approach or just a mistake. Why should he be forced prematurely into litigation with professional organizations which already have adjudicative mechanisms to handle such disputes internally? Soignier could have stressed the importance of institutions working things out internally if they can, free from undue litigation pressures.

■ Even if he had made these assertions, there are stronger countervailing concerns. Important policies underlie statutes of limitations: rapid resolution of disputes; repose for those against whom a claim could be brought; avoidance of litigation involving lost evidence or distorted testimony of witnesses. *See Wilson*, 471 U.S. at 271, 105 S.Ct. at 1944. Sensitive to these policies, *Ricks* and its progeny dictate that the cause of action accrues at the time of the initial injury. Here, because each of the elements of an ADA claim were present when Soignier took his orals for the fifth time in November 1992, the two-year limitations period began to run then. To avoid premature litigation, the Board could have agreed to waive or toll the statute of limitations. Likewise, Soignier could have timely filed his suit and requested a stay pending the outcome of the internal appeal. The parties employed neither tactic, allowing the two-year period to expire.

## C. Equitable Tolling/Equitable Estoppel

Soignier also claims that the statute of limitations should be equitably tolled and that the Board is equitably estopped to assert a limitations defense. Neither argument is persuasive.

■ Equitable tolling applies when a plaintiff, despite the exercise of due diligence and through no fault of his own, cannot determine information essential to bringing a complaint. *Thelen*, 64 F.3d at 268 (citing *Chakonas v. City of Chicago*, 42 F.3d 1132, 1135 (7th Cir.1994); *Cada*, 920 F.2d at 451). In November 1992, Soignier was aware of

each of the elements of his ADA claim: (a) he was a qualified person with a disability; (b) the law required the Board to provide him with reasonable accommodations during the test; and (c) the Board allegedly failed to provide those accommodations. *See D'Amico*, 813 F.Supp. at 221. "[T]he limitations period begins to run when a reasonable person would believe he may have a cause of action...." *Thelen*, 64 F.3d at 268 (quoting *Cada*, 920 F.2d at 451). Because the allegations in his own complaint demonstrate he knew each of these elements at the fifth try at the orals, equitable tolling does not extend the limitations period on his claim.

 Equitable estoppel requires that "the defendant takes active steps to prevent the plaintiff from suing in time, ... such as by hiding evidence or promising not to plead the statute of limitations." *Thelen*, 64 F.3d at 267 (citing *Cada*, 920 F.2d at 450–51). Soignier asserts that the Board delayed hearing his internal appeal until November 1994, the last day of the month in which the statute of limitations ran, and explained his internal appeal option without also telling him he had the option to file a lawsuit. These actions do not amount to the misleading promises not to plead the statute of limitations or destruction of documents which constitute equitable tolling. *Thelen*, 64 F.3d at 267. Dr. Soignier points to no other facts which would qualify under this standard.

### III.

Because the elements of an ADA claim were present when Soignier took his orals for the fifth time in November 1992, the applicable Illinois two-year personal injury limitations period began to run then. Neither Soignier's internal appeal nor the legal doctrines of equitable tolling or equitable estoppel stay that limitations period. The May 1995 filing of this suit is thus too late. Accordingly, the district court's dismissal of Soignier's complaint as time-barred is

AFFIRMED.