**Robert ALBERTI, Plaintiff,**

v.

**CITY AND COUNTY OF SAN FRANCISCO SHERIFF'S DEPARTMENT, et al., Defendants.**

**No. C–98–2834 WHO.**

United States District Court, N.D. California.

Nov. 25, 1998.

Vicki A. Laden, Boxer & Gerson, Oakland, CA, for plaintiff.

Janet Carroll Richardson, City Attorney's Office, San Francisco, CA, for City and County of San Francisco Sheriff's Department.

Troy D. Wiggins, Wiggins, Robin & Richard, San Francisco, CA, for Santa Rosa Junior College and Sonoma County Junior College District.

## OPINION

ORRICK, District Judge.

In this Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, action brought by plaintiff Robert Alberti ("Alberti") against defendants City and County of San Francisco Sheriff's Department ("Sheriff's Department"), Santa Rosa Junior College, and Sonoma Junior College District, defendants now move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth hereinafter, the motion is granted in part, and denied in part.

### I.

These facts are drawn from Alberti's complaint. Alberti, a sufferer of various learning disabilities, was hired as a Deputy Sheriff by the Sheriff's Department in February 1995. As a condition of his employment, Alberti was required to attend and successfully pass a course called "Basic Law Enforcement" at the Santa Rosa Training Center of the Santa Rosa Junior College.

During the hiring process, Alberti informed the Sheriff's Department that he had a history of learning disabilities. To substantiate his claim, Alberti provided the Sheriff's Department with documents detailing his problems. He also requested that the Sheriff's Department provide him with reasonable accommodations, including untimed and oral testing, during the Law Enforcement training course. The Sheriff's Department refused Alberti's request and insisted that he attend the course as scheduled, with no accommodations.

Alberti was not able to satisfactorily complete the course work at the Training Center. He also maintains that the instructional and

administrative staff at the Santa Rosa Training Center harassed him on the basis of his disability and improperly disseminated information about his disability.

As a result of his inability to satisfactorily complete his course work at the Training Center, the Sheriff's Department terminated Alberti on May 10, 1996.

Alberti filed this suit on July 17, 1996, under Titles I and II of the ADA, 42 U.S.C. § 12101 *et seq.*, and the California Fair Employment and Housing Act ("FEHA"). Cal. Gov't Code § 12940 *et. seq.*

## II.

In identical motions, defendants move to dismiss this action on three grounds. First, they argue that Alberti's first, second, third, and fourth causes of action under Title I of the ADA must be dismissed because Alberti has failed to exhaust his administrative remedies. Second, they argue that Alberti's first, second, third, and fourth causes of action under Title II of the ADA must be dismissed because Title II does not create a cause of action for employment discrimination. Alternatively, they contend that if a Title II cause of action for discrimination is recognized, Alberti's Title II claim is time barred. Finally, defendants assert that Alberti's fifth, sixth, seventh, and eighth causes of action under the FEHA should also be dismissed because he has failed to exhaust his administrative remedies.

## III.

The Court begins first with the more complex issue regarding Alberti's ability to sue for employment discrimination under Title II of the ADA.

## A.

Alberti argues strenuously that Title II of the ADA covers employment discrimination. Defendants counter that no such claim exists under Title II and argue that Title I is the ADA's exclusive remedy for Alberti's employment discrimination claim. The practical effect of the parties' arguments about Title II's meaning will lead to different results on the question of this suit's timeliness. (*See* discussion, *infra* Section C, regarding timeliness of Alberti's ADA claims.)

Title II falls under the subchapter II heading "Public Services." Pub.L. 101–336, Title II, §§ 202–205, July 1990, 104 Stat. 337 (1990) (codified as amended at 42 U.S.C. §§ 12131–12134). Title I covers public entities such as state or local governments. 42 U.S.C. § 12131. Section § 12132 codifies § 202 of Title I and provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, *be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.*

(Emphasis added.)

Section 202 of Title II states that the remedies and procedures applicable to § 505 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a, shall apply to Title II claims. 42 U.S.C. § 12133.

The statute's last proviso, barring "discrimination by any such entity" does not mention employment discrimination. The omission of the word "employment" from the statute forms the centerpiece of defendants' argument. They contend that Title I does not provide a private cause of action for employment discrimination because the word "employment" is not appended to the broad antidiscrimination clause found in the last phrase of § 12132.

Defendants also assert that interpreting Title II as extending to employment discrimination would render Title I redundant, because Title I creates a comprehensive scheme for addressing employment discrimination by both private and public entities. Defendants argue that § 12132 was intended to prohibit state and local governments from discriminating with respect to government services such as public transportation, education, or welfare benefits, not employment.

The United States Department of Justice's ("DOJ") interpretation of Title II is consistent with Alberti's argument that Title II covers employment discrimination. The DOJ's interpretative regulations for Title II state: "Title II of the ADA applies to all activities of public entities, including their

employment practices." 28 C.F.R. pt. 35, App. A. The DOJ has promulgated regulations consistent with this interpretation: "No qualified individual with a disability shall, on the basis of disability, be subjected to discrimination in *employment* under any service, program, or activity conducted by a public entity." 28 C.F.R. § 35.140(a) (emphasis added).

The Ninth Circuit has never directly addressed the issue of whether Title II creates a cause of action for employment discrimination. It did, however, in dicta, permit the plaintiffs in *Norman–Bloodsaw v. Lawrence Berkeley Laboratory,* 135 F.3d 1260, 1272–73 (9th Cir.1998), to proceed under Title II with their employment discrimination claims.

In that case, plaintiffs filed suit against their employer, Lawrence Berkeley Laboratory, a research institute jointly operated by state and federal agencies. The plaintiffs alleged that Lawrence Berkeley Laboratory forced them to submit to sickle cell and syphilis testing as condition of their employment. They maintained that the forced testing violated, among other things, Title VII and the ADA. *Id.* at 1264, 1271–74.

Without directly deciding whether Title II authorizes suits against state and local governments for employment discrimination, the Court noted in passing that the plaintiffs could challenge the medical examinations that occurred on or after January 26, 1992 under Titles I and II of the ADA, because the "relevant portions" of Titles I and II, which apply to public entities only, went into effect on January 26, 1992 and July 26, 1992, respectively. *Id.* at 1273 & n. 21. It ultimately reversed the district court's grant of summary judgment for defendants because it found that material and disputed issues of fact existed regarding how the test was administered and whether the plaintiffs consented to the testing. *Id.* at 1275.

Similarly, the Fourth Circuit also appears inclined to recognize a cause of action for

employment discrimination under Title II. In *Doe v. University of Maryland Medical System Corp.,* 50 F.3d 1261, 1264 (4th Cir.1995), the Fourth Circuit considered a Title II challenge brought by a neurosurgical resident who sued a hospital for terminating him because he was infected with the AIDS virus. The parties did not dispute that the University of Maryland Medical Systems Corporation ("UMMSC") was a public entity subject to the provisions of Title II of the ADA. *Id.* at 1264. The Court acknowledged this by noting that "[t]he parties do not dispute that UMMSC is a 'public entity' subject to the provisions of Title II of the ADA." *Id.* at 1264 n. 8. Because the parties did not raise the issue, the Court did not disagree with the assessment by raising the issue *sua sponte.* The Court implicitly agreed with the parties' assessment that Title II covered employment discrimination by setting forth a three-prong test that plaintiffs must meet in order to prove a claim of employment discrimination under § 504 of the Rehabilitation Act or Title II of the ADA. *Id.* at 1265.

The Eleventh Circuit is the only circuit court to fully address this issue. In *Bledsoe v. Palm Beach County Soil & Water Conservation District,* 133 F.3d 816 (11th Cir.1998), following a lengthy and thorough examination of Title II, including its statutory scheme and legislative history, it held that Title II covers claims for employment discrimination. *Id.* at 822–23. The majority of district courts have carefully followed the *Bledsoe* reasoning and the clear trend in the district courts is to permit employment discrimination claims to be brought under Title II.[1]

The district courts in the Ninth Circuit, however, have taken a different stand. Judges Conti and Smith have dismissed Title II claims alleging employment discrimination, finding that Title II applies only to discrimination in public services. *Larramendy v. San Mateo Co. Transit Dist.,* C–97–3436 FMS, 1998 WL 456283, at * n. 1

---

1. *See, e.g., Downs v. Massachusetts Bay Transp. Auth.,* 13 F.Supp.2d 130, 136 (D.Mass.1998); *Dominguez v. City of Council Bluffs,* 974 F.Supp. 732, 736–37 (S.D.Iowa 1997); *Hernandez v. City of Hartford,* 959 F.Supp. 125, 133 (D.Conn.1997); *Davoll v. Webb,* 943 F.Supp. 1289, 1297 (D.Colo. 1996); *Wagner v. Texas A & M Univ.,* 939 F.Supp. 1297, 1309 (S.D.Tex.1996); *Graboski v.*

*Guiliani,* 937 F.Supp. 258, 267–69 (S.D.N.Y. 1996), *aff'd* 142 F.3d 58 (1998); *Ethridge v. Alabama,* 847 F.Supp. 903, 905–06 (M.D.Ala.1993); *Eisfelder v. Michigan Dept. of Natural Resources,* 847 F.Supp. 78, 83 (W.D.Mich.1993); *Finley v. Giacobbe,* 827 F.Supp. 215, 219–20 (S.D.N.Y. 1993); *Petersen v. Univ. of Wis. Bd. of Regents,* 818 F.Supp. 1276, 1278 (W.D.Wis.1993).

(N.D.Cal. July 30, 1998); *Iskander v. Rodeo Sanitary Dist.*, C–94–0479 SC, 1995 WL 56578 (N.D.Cal. Feb.7, 1995).

### B.

In cases of statutory interpretation, the Court must begin with the language of the statute. *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 505–06, 133 L.Ed.2d 472 (1995). " 'In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.' " *Sullivan v. Everhart*, 494 U.S. 83, 89, 110 S.Ct. 960, 108 L.Ed.2d 72 (1990) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988)) (citation omitted). If the intent of Congress is unambiguously clear from the face of the statute, then the Court's inquiry ends, and the Court must give effect to Congress' expressed intent. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778. "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Id.* at 843–44, 104 S.Ct. 2778. Courts must give an agency's interpretation of a statute great deference in instances where Congress has given the agency the authority to fill in the gaps of an administrative program. *Id.* "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 843–44, 104 S.Ct. 2778.

In light of *Chevron,* the DOJ's interpretation that Title II prohibits employment discrimination by public entities is entitled to a large degree of deference. Title II in essence authorizes the Attorney General to "fill in the gaps" of Title II, by specifically direct-ing the Attorney General to promulgate Title II regulations that are consistent with existing regulations implementing § 504 of the Rehabilitation Act. 29 U.S.C. § 794; *see* 42 U.S.C. § 12134(a), (b).

### 1.

In keeping with the procedure for statutory analysis set forth in *Chevron,* the Court begins with the language of Title II. Section 202 of Title II, codified at 42 U.S.C. § 12132, prohibits public entities from excluding disabled individuals from participating in or receiving the benefits of any services, programs or activities. The last clause appears to use deliberately expansive language. *See* 42 U.S.C. § 12132 ("or be subject to *any* discrimination") (emphasis added). This phrase contains no words of limitations. A comma precedes the clause "or be subjected to discrimination," thus indicating that it is a separate clause that is independent of the earlier language barring exclusion from programs and activities. The use of the disjunctive "or" also shows that the earlier language was not intended to act as a modifier of the later language.

The statute's construction evinces congressional intent to keep the term "or be subject to such discrimination" broad. Although Congress did not insert the word "employment" it could be read to include all forms of discrimination, whether in employment or in the provision of public services.

Congress modeled Title II of the ADA after the Rehabilitation Act. Section 203 of Title II provides that the remedies, procedures, and *rights* set forth in § 505 of the Rehabilitation Act are to be applied to Title II claims. 42 U.S.C. § 12133. Section 505 of the Rehabilitation Act, which applies to nonfederal employees, contains no exhaustion requirement. 29 U.S.C. § 794a(a)(2) (incorporating procedures of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d *et seq.*). Despite the absence of the word "employment" in an earlier version of the Rehabilitation Act (which bears a strong resemblance to the language used in § 202 of Title II, 42 U.S.C. § 12132[2]),

---

**2.** Section 504 of the Rehabilitation Act provides:

No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the bene-fits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance

. . . .

29 U.S.C. § 794(a).

when Congress passed the ADA in 1990, it was clearly established that the Rehabilitation Act covers employment discrimination. *See Consolidated Rail v. Darrone,* 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984). The Rehabilitation Act was revised in 1992 and by statute now covers employment discrimination, as it directs that the standards in Title I are to be "used to determine whether this section has been violated in a complaint alleging employment discrimination." Pub.L. No. 102–569, § 506 (1992), 29 U.S.C. § 794(d). Thus, Title II's cross-references to the Rehabilitation Act provide strong support for finding that Title II reaches employment discrimination. Reconciling Title II's rather straightforward language with the entire statutory scheme of the ADA is more difficult, because the statute as a whole is complex and riddled with overlapping and frequently incongruous provisions. The strongest argument against reading Title II to include employment discrimination is that Title II itself begins with the heading "Public Services." Pub.L. No. 101–336, Title II, §§ 202–205, July 1990, 104 Stat. 337 (1990) (codified as amended at 42 U.S.C. §§ 12131–12134). Nowhere in Title II is employment discrimination mentioned. Construing the statute to include employment discrimination requires defining employment as one of the many "services, programs, or activities" offered by a public entity or by reading employment discrimination into the general prohibition against discrimination "by any such entity" found in § 12132.

Title I, entitled "Employment" on the other hand, specifically addresses employment discrimination. Pub.L. No. 101–336, 104 Stat. 330 (1990), Title I, §§ 101–108, 42 U.S.C. §§ 12111–12117. Construing Title II's coverage to employment discrimination would then render Title I a redundancy, to some extent, because both statutes would cover identical subject matter. *See Decker v. University of Houston,* 970 F.Supp. 575, 578–79 (S.D.Tex.1997) ("[a]llowing public employees to file private suits against their employers under Title II renders Title I and its detailed regulatory scheme redundant.").

Moreover, another anomaly exists with respect to this construction of Title II. Title I requires exhaustion of administrative reme-

dies. 42 U.S.C. § 12117 (incorporating exhaustion requirements set forth in Title VII, 42 U.S.C. § 2000e–5, to Title I claims). Title II, on the other hand, does not. Prior to the passage of the ADA, courts uniformly implied a private right of action in § 504 of the Rehabilitation Act and found that aggrieved parties were not required to pursue administrative remedies before filing suit. *See Smith v. Barton,* 914 F.2d 1330, 1338 (9th Cir.1990), *cert. denied,* 501 U.S. 1217, 111 S.Ct. 2825, 115 L.Ed.2d 995 (1990) (holding a plaintiff need not exhaust administrative remedies before filing suit under § 504 of the Rehabilitation Act). By implication then, based on Congress' intent to use the Rehabilitation Act's procedures, it is apparent that Congress intended that resort to administrative remedies prior to bringing a Title II suit is optional, but not required. *See Winfrey v. City of Chicago,* 957 F.Supp. 1014, 1022–23 (N.D.Ill.1997) (no exhaustion requirement in Title II); *Petersen v. University of Wisconsin Bd. of Regents,* 818 F.Supp. 1276, 1279 (Title II does not require exhaustion of administrative remedies).

The DOJ has issued regulations consistent with procedures that Congress drew from these interrelated statutes, which state clearly that pursuit of administrative remedies is optional, but is not a requirement of filing a Title II suit. *See* 28 C.F.R. § 35.172(b) ("At any time, the complainant may file a private suit pursuant to section 203 of the Act, whether or not the designated agency finds a violation."); 28 C.F.R. § 35.140 (prohibiting "discrimination in employment under any service, program, or activity conducted by a public entity").

Title I and II's contrary and conflicting procedural requirements for filing suit leads to strange results. The district court that was reversed by the Eleventh Circuit in *Bledsoe* explained it well:

Both Title I and Titles [*sic*] II apply to employment, although Title II says nothing at all on the subject and Title I lays out a comprehensive scheme to deal with employment issues; Title I says an employer must hire 15 employees to be sued for employment discrimination, but you can get around this under Title II if your

employer is an arm of the State; Title I says you must exhaust administrative remedies, but you can ignore this requirement too if you are employed by the State. If this is really what Congress meant, then the ADA surely must rank as one of the great drafting debacles of recent times.

*Bledsoe v. Palm Beach Soil & Water Conservation Dist.*, 942 F.Supp. 1439, 1443 (S.D.Fla. 1996), *rev'd Bledsoe,* 133 F.3d 816.

### 2.

■ After giving thorough consideration to this issue, the Court concludes that Title II does prohibit employment discrimination by public entities. An examination of the language of the statute and its legislative history reveals that Congress in fact intended to have Title II cover employment discrimination, as well as discrimination in public services.

Virtually all of the legislative history on § 12132 begins by stating that one of the central purposes of Title II is to incorporate the protections against discrimination afforded by § 504 of the Rehabilitation Act of 1973. *See* Senate Committee on Labor and Human Resources, S.Rep. No. 116, 101st Cong., 1st Sess. at 44 (1989). Prior to the passage of Title II, it was well settled that the Rehabilitation Act's language barring discrimination in "activities and programs" covered employment discrimination. *See Consolidated Rail,* 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568. Because Congress took pains to incorporate the Rehabilitation Act requirements into § 12132, it appears that it also intended to make its employment discrimination prohibition applicable to Title II as well.

The legislative history reveals that Congress intended to have Titles I and II overlap to a large degree. The House Committee Report dealing with Title II states: "[the forms of discrimination prohibited by § 202 of Title II, 42 U.S.C. § 12132] are comparable to those set out in the applicable provisions of titles I and III of this legislation." House Comm. on Educ. and Labor, H.R.Rep. No. 485(II), 101st Cong., 2d Sess. at 84 (1990). Thus, the redundancy of Title I and Title II appear to reflect deliberate congressional policy choices.

Finally, it is clear that Congress intended to include employment discrimination within § 12132's antidiscrimination prohibition, because it said so directly:

> The Committee has chosen not to list all the types of actions that are included within the term ...

.      .      .      .      .

> The general prohibitions set forth in Section 504 regulations, are applicable to all programs and activities in title II. The specific sections on *employment* and public access in existing facilities are subject to the "undue hardship" and "undue burden" provisions of the regulations which are incorporated in Section 204.

H.R.Rep. 101–485(III), 101st Cong., 2d Sess. 50 (1990) emphasis added.

Based on the language of the statute and its legislative history, as well as the DOJ's legislative regulations, the Court finds that Title II encompasses employment discrimination. Although this finding leads to some inconsistency and overlap between Titles I and II, the legislative history shows that Congress contemplated this to a large degree. The DOJ's interpretation of Title II's ambiguity with respect to this issue is not clearly erroneous or arbitrary. *See Chevron,* 467 U.S. at 843–44, 104 S.Ct. 2778.

In sum, for the reasons discussed above and in *Bledsoe,* Alberti has properly stated a claim under Title II for employment discrimination. 133 F.3d at 816.

### C.

Now that the Court has found that Alberti has properly stated a claim under Title II, it turns to the timeliness of it.

### 1.

The ADA does not contain a specific statute of limitations. Title I instead incorporates the procedures set forth in Title VII. 42 U.S.C. § 12117 (incorporation of the procedures set forth in Title VII at 42 U.S.C. § 2000e–5). As previously discussed, parties claiming a violation of Title I must file an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") within one hundred eighty days of the occurrence of the alleged discrimination as a prerequisite to a civil suit. *See* 42

U.S.C. § 2000e–5(b), (e)(1). After the EEOC has issued the plaintiff a right-to-sue-letter, the plaintiff has ninety days from receipt of the letter to file a civil suit under Title I. 42 U.S.C. § 2000e–(5)(f)(1).

■ Because the Rehabilitation Act, from which Title II borrows, contains no statute of limitations, courts are directed to apply the most appropriate state limitations period. 42 U.S.C. § 1988(a); *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Several courts have analogized ADA cases to state personal injury actions. *See, Holmes v. Texas A & M Univ.,* 145 F.3d 681, 683–84 (5th Cir.1998); *Soignier v. American Bd. of Plastic Surgery,* 92 F.3d 547, 551 (7th Cir.1996), *cert. denied,* 519 U.S. 1093, 117 S.Ct. 771, 136 L.Ed.2d 716 (1997). In California, there is a one year statute of limitations for personal injury actions. Cal.Code. Civ.Proc. § 340(3). Accordingly, a one-year of statute of limitations applies to Alberti's Title II claim. *See Schonfeld v. City of Carlsbad,* 978 F.Supp. 1329, 1332–33 (S.D.Cal.1997) (holding that California's one-year statute of limitations for personal injury actions applies to Title II claim).

Here, Alberti filed a Title II complaint with the DOJ on June 16, 1998.[3] (Alberti Decl. at ¶ 4.) In April 1998, Alberti contacted an attorney and requested a right-to-sue letter from the DOJ because of the two-year delay that he was experiencing with the DOJ's handling of his complaint. (*Id.* at ¶ 6.) On April 28, 1998, the DOJ issued Alberti a right-to-sue letter, which came with the heading "Notice of Right to Sue Within 90 Days." (Laden Decl.Ex. 5.) In the letter, the DOJ stated that it would "not continue the investigation into [Alberti's Title II] complaint" because Alberti had indicated his desire to file suit under Title I. (*Id.*) Alberti

filed this suit on July 17, 1998, alleging violations of Titles I and II, within ninety days of receiving the DOJ's right-to-sue letter.

Defendants contend Alberti's Title II claim is barred by the one-year statute of limitations, because it was brought more than two years after he was terminated in May 1996. Defendants maintain that the statute of limitations period for Alberti's Title II claim should not be tolled during the time that it was under investigation at the DOJ, because Alberti was not statutorily required to file with the DOJ or otherwise exhaust his administrative remedies before filing suit in federal court.

2.

■ The doctrine of equitable tolling serves to save a claim that would otherwise be time barred when certain extenuating circumstances are present. *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 99, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (concluding that Title VII claim was time-barred and not subject to equitable tolling).

■ A federal court may apply California equitable tolling law to a federal claim that also involves administrative remedies if doing so is not inconsistent with federal law. *Fobbs v. Holy Cross Health Sys. Corp.,* 29 F.3d 1439, 1444 (9th Cir.1994), *cert. denied,* 513 U.S. 1127, 115 S.Ct. 936, 130 L.Ed.2d 881 (1995). Nothing in Title II's provisions indicate any inconsistency with California law on equitable tolling. Accordingly, the Court applies it to Alberti's claim.

■ Equitable tolling is applied in California where a plaintiff who possesses several legal remedies, reasonably and in good faith pursues one designed to lessen the extent of his injuries or damage. *Addison v.*

---

**3.** The Court notes that defendants objected to the evidence that Alberti submitted in opposing their motion to dismiss, arguing that the Court should refuse to consider this evidence because it goes outside the pleadings. To the extent that the Court refers to the evidence that Alberti submitted, it does so only to determine whether to grant him leave to amend. In so doing, the Court is not converting the motion to dismiss into a summary judgment motion. Dismissal based on the assertion that the facts alleged in the complaint fall outside the statute of limitations is not enough to support dismissal under Rule 12(b)(6).

W. Schwarzer & A. Tashima, *Cal.Prac. Guide: Federal Civil Procedure Before Trial* § 9:214.1 at 9–51 (1998). Dismissal can be granted "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute [had been] tolled." *Cervantes v. City of San Diego,* 5 F.3d 1273, 1275 (1993). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

*California,* 21 Cal.3d 313, 318, 146 Cal.Rptr. 224, 578 P.2d 941 (1978). The Ninth Circuit set forth the California courts' "definitive three-pronged test" for invoking equitable tolling in a subsequent claim that bears substantial similarity to a prior claim in another forum. *See Cervantes v. City of San Diego,* 5 F.3d 1273, 1275 (9th Cir.1993). The tests consists of the following elements: (1) timely notice to the defendants in filing the first claim; (2) lack of prejudice to the defendants in gathering evidence for the second claim; and (3) good faith and reasonable conduct in filing the second claim. *Id.*

The Court finds that Alberti can amend his complaint to allege equitable tolling. *See Supermail Cargo, Inc. v. United States,* 68 F.3d 1204, 1206 (9th Cir.1995) (citation omitted) (stating court should read complaint liberally when considering motion to dismiss based on running of statute of limitation).

Alberti meets the three-prong test in *Cervantes.* He appears to have pursued his Title II complaint with the DOJ in the hopes that his complaint could be resolved without resort to the courts and the expense that litigation would entail. He did so diligently, and there is no evidence of unexcusable neglect. Defendants were on notice of the claim through the DOJ's investigation and they have not argued that they have been prejudiced in any manner. Under the *Addison* holding, the fact that Alberti was not obligated to utilize the DOJ's administrative system does not bar his later suit against the defendants based on the very same statute.[4]

In an effort to shore up their position that Alberti's claims should not be equitably tolled, defendants cite several cases where courts have refused to apply equitable tolling. Those cases are distinguishable, however, because they involved federal causes of actions designed to address vastly different rights. *See, e.g., 'Fobbs,* 29 F.3d at 1444–46 (deciding that equitable tolling did not apply to § 1981 claim during the pendency of plaintiff's complaints filed through the Office for Civil Rights and employer's internal administrative review process); *Stallcop v. Kaiser Foundation Hosps.,* 820 F.2d 1044, 1049–50 (9th Cir.1987) (holding suit brought under § 301 of the Labor Management Relations Act was barred by statute of limitations and not subject to equitable modification), *cert. denied,* 484 U.S. 986, 108 S.Ct. 504, 98 L.Ed.2d 502 (1987); *Williams v. United States,* 711 F.2d 893, 899 (9th Cir.1983) (dealing with tolling under the Suits in Admiralty Act ("SAA") and the Federal Tort Claims Act); *Ammer v. United States,* 881 F.Supp. 1007, 1011–12 (D.Md.1994) (dealing with tolling issues under the SAA and the Public Vessels Act), *aff'd,* 56 F.3d 60 (1995). The courts in those cases rightfully refused to apply equitable tolling, because there was no similarity between the claims brought in different forums. Alberti's claims in this Court and at the DOJ are not only similar, but identical.

In conclusion, defendants' motion to dismiss Alberti's first, second, third, and fourth causes of action under Title II of the ADA is

---

4. Defendants make much of the fact that Alberti was not required to file an administrative complaint with the DOJ, arguing that consequently, he should not be able to invoke the doctrine of equitable tolling. Defendants do so relying heavily on *Salgado v. Atlantic Richfield,* 823 F.2d 1322 (9th Cir.1987). In that case, the Court held that the limitations period under California's Fair Employment and Housing Act was tolled during the EEOC's investigation of the complaint. Defendants argue that the court's holding in *Salgado* was necessitated by one distinguishing fact—there, " 'the initial pursuit of state administrative remedies [was] a *mandatory* step in the process of obtaining relief under Title VII.' " *Id.* at 1326 n. 2 (emphasis added) (quoting *London v. Coopers & Lybrand,* 644 F.2d 811, 815 (9th Cir.1981)).

In contrast, defendants in this case maintain that equitable tolling is not applicable to Alberti's Title II claims because Title II did not require him to first seek remedies through the DOJ's administrative process before instituting this suit.

Defendants' emphasis on the mandatory exhaustion distinction is misplaced. Their quotation from *Salgado* appears in a passing footnote and is attempt to explain the procedural requirements of Title VII. *See id.* Central to the *Salgado* court's decision was the general rule stating that "a state statute of limitations is tolled when the plaintiff is pursing an administrative remedy for the same alleged wrongdoing." *Id.* at 1326 (citations omitted). The Court stated that equitable tolling may apply when "proper circumstances" exist. *Id.* The decision does not hold that mandatory exhaustion rules are the only way to trigger the doctrine of equitable tolling.

granted, with leave to amend to allege equitable tolling.

### 3.

Defendants also move to dismiss Alberti's first, second, third, and fourth cases of action under Title I because he did not first file a claim with the EEOC. Defendants additionally move to dismiss Alberti's fifth, sixth, seventh, and eighth causes of action under the FEHA, arguing again that he failed to exhaust his administrative remedies.

### a.

■ Alberti's Title I claim is dismissed for failure to exhaust administrative remedies. As discussed above, before filing a civil suit under Title I, plaintiffs are first required to file an administrative complaint with the EEOC. *See* 42 U.S.C. § 12117 (cross-referencing 42 U.S.C. § 2000e–5). Alberti failed to do so.

In his papers, Alberti makes no mention of his Title I claim, though defendants specifically moved to dismiss it. In his opposition, Alberti argues only that he has a viable claim under Title II. (*See* Pls.' Mem. of P. & A. in Opp'n to Defs' Mot. to Dismiss at 4.) Nor does Alberti attempt to rebut any of defendants' arguments urging dismissal of his Title I claim because he failed to present those claims to the EEOC before commencing this suit.

Because Alberti did not oppose the motion to dismiss the Title I claims, defendants' motion to dismiss his first, second, third, and fourth causes of action brought under Title I is granted.

### b.

■ On the issue of FEHA exhaustion, it is clear that Alberti never filed a complaint with the California Department of Fair Employment and Housing ("DFEH"). Defendants therefore argue that all of Alberti's FEHA claims should be dismissed, because administrative exhaustion of the FEHA claims is a *jurisdictional,* not a procedural requirement. *Okoli v. Lockheed Technical Operations Co.,* 36 Cal.App.4th 1607, 1613, 43 Cal.Rptr.2d 57 (1995). A court may not ex-

ercise jurisdiction over claims that have not first been brought to the DFEH. *Id.*

In response, Alberti again argues that equitable tolling should apply, this time to his FEHA claims. Specifically, Alberti contends that certain language in the DOJ's Title II Technical Assistance Manual led him to believe that the DOJ would refer his complaint to the DFEH. The DOJ never did so, and based on the evidence Alberti submitted, appears to have no duty to forward ADA complaints to the DFEH. The DOJ's Title II Technical Assistance Manual that Alberti attached to his opposition to the motion to dismiss states that the DOJ refers Title II complaints only to other federal agencies. (Alberti Decl.Ex. E at 49.)

■ Alberti's DFEH claims are dismissed. This Court cannot waive the jurisdictional requirement that mandates that individuals must first file a complaint with the DFEH before bringing a civil suit under the FEHA. Alberti asks this Court to apply equitable tolling; he is, however, asking for far more. He is essentially asking this Court to waive a jurisdictional requirement, not apply equitable tolling to an action that is properly brought but otherwise barred by the statute of limitations. An EEOC right-to-sue letter does not satisfy the jurisdictional requirement of exhaustion of remedies as to FEHA claims. *Martin v. Lockheed Missiles & Space Co.,* 29 Cal.App.4th 1718, 1724, 35 Cal. Rptr.2d 181 (1994). Nor does the right-to-sue letter that Alberti received from the DOJ serve to override the clear exhaustion requirement under the FEHA.[5] *See Okoli,* 36 Cal.App.4th at 1613, 43 Cal.Rptr.2d 57.

Therefore, Alberti's fifth, sixth, seventh, and eighth causes of action under FEHA are dismissed due to Alberti's failure to exhaust his administrative remedies.

### III.

Accordingly,

IT IS HEREBY ORDERED that:

---

**5.** Alberti relies on unpublished authority to argue that he falls within an exception to FEHA's exhaustion requirements. *See Cadelinia v. Hilton Int'l,* No. 95 CIV. 10393(MEM), 1996 WL 479439

(S.D.N.Y. Aug.23, 1996). The Court will not consider unpublished cases outside the Northern District of California.

1. Defendants' motion to dismiss Alberti's first, second, third, and fourth causes of action under Title I of the ADA is GRANTED, because Alberti has failed to exhaust is exhaust his administrative remedies.

2. Defendants' motion to dismiss Alberti's first, second, third, and fourth causes of action under Title II of the ADA is GRANTED, with leave to amend to allege a claim for equitable tolling. Alberti's amended complaint shall be filed no later than December 11, 1998. Failure to do so will result in dismissal of Alberti's Title II causes of action.

3. Defendants' motion to dismiss Alberti's fifth, sixth, seventh, and eight causes of action under FEHA is GRANTED, because Alberti has failed to exhaust his administrative remedies.