**Suzanne DECK, et al., Plaintiff,**

v.

**CITY OF TOLEDO, et al., Defendant.**

**No. 3:98CV7451.**

United States District Court,
N.D. Ohio,
Western Division.

June 29, 1999.

William B. Senhauser, John Mark Finnegan, Equal Justice Foundation, Toledo, OH, Thomas J. Zraik, Sylvania, OH, for plaintiffs.

Barbara E. Herring, Geoffrey H. Davis, City of Toledo, Department of Law, Toledo, OH, for defendants.

Marlon A. Primes, Office of the U.S. Attorney, Cleveland, OH, for United States of America, amicus.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on the municipal Defendants' motion for partial summary judgment. For the following reasons, Defendants' motion is denied. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## BACKGROUND

On August 8, 1998, seven (7) named Plaintiffs filed this suit against the City of Toledo, Division of Transportation, and Mayor Carleton Finkbeiner, in his official capacity as Mayor of Toledo, on behalf of themselves and others seeking to require the City of Toledo to comply with the ADA's requirement that all streets and sidewalks altered after January 26, 1992 be in compliance with the ADA's standards for curb ramps. *See* the Americans with Disabilities Act, 42 U.S.C. § 12132, the ADA Accessibility Guideline, 28 C.F.R. Part 36, Appendix A, and the standards developed by the City of Toledo. Plaintiffs are disabled persons who rely on manual or motorized wheel chairs or motorized scooters for mobility. Plaintiffs either live in the City of Toledo or frequently travel in Toledo. Due to the safety hazards posed by the improperly installed ramps, Plaintiffs moved for a preliminary injunction against the City requiring curb ramp modifications to be rendered in compliance with the governing laws and regulations as soon as practically possible. This Court granted Plaintiffs' motion for a preliminary injunction in a Memorandum Opinion issued on November 20, 1998 and the City was required to bring the listed curb ramps into compliance with ADA standards according to the Court's timetable.

The municipal Defendants now bring a motion for partial summary judgment on Plaintiffs' claims concerning all intersections where streets or sidewalks were constructed or altered before May 5, 1996, which is two years prior to the date from which the parties agreed to toll the statute of limitations. Plaintiffs oppose the motion and the United States of America has filed an *amicus* brief in support of Plaintiffs' opposition to Defendants' motion for summary judgment. The issues before the Court are matters of first impression: (1) what is the statute of limitations under the ADA in Ohio; and (2) did the City's action of repeatedly failing to install curb ramps which met ADA standards constitute a continuing violation for purposes of usurping the statute of limitations? The foregoing issues are addressed below.

## DISCUSSION

### A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demon-

strate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

## B. The ADA and the Statute of Limitations

Title II of the Americans with Disabilities Act (ADA) prohibits discrimination in the provision of public services. Section 202 of the ADA provides:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The ADA, like many federal civil rights statutes, does not contain a specific statute of limitations. 42 U.S.C. § 12132; *Soignier v. American Board of Plastic Surgery*, 92 F.3d 547, 550 (7th Cir.1996) cert. denied, 519 U.S. 1093, 117 S.Ct. 771, 136 L.Ed.2d 716 (1997) citing § 42 U.S.C.1988(a) and *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985).

"*Wilson* dictates a three-step borrowing analysis: if no federal law provides a limitations period (step 1), the common law as modified by state statute is to be applied (step 2), but only if it is not inconsistent with the Constitution and laws of the United States (step 3). Under step 2, courts are to select the statute of limitations of the state cause of action 'most appropriate' or 'most analogous' to the plaintiff's claim. *See, e.g., Owens v. Okure*, 488 U.S. 235, 239, 109 S.Ct. 573, 576, 102 L.Ed.2d 594 (1989); *Burnett v. Grattan*, 468 U.S. 42, 47–48, 104 S.Ct. 2924, 2928–29, 82 L.Ed.2d 36 (1984)." *Soignier*, 92 F.3d at 550–551. Therefore, under *Wilson* individual states are left to determine an appropriate limitations period for actions arising under the ADA in their courts.

Surprisingly, neither Ohio courts nor the Sixth Circuit has determined the applicable statue of limitations for an action arising under the ADA in Ohio. ADA actions have been characterized as arising out of a "fundamental injury to the individual rights of a person". *Soignier*, 92 F.3d at 551. Indeed, most civil rights actions are essentially claims to vindicate injuries to personal rights. *Everett v. Cobb County School Dist.*, 138 F.3d 1407, 1409 (11th Cir.1998). *See also Wilson*, 471 U.S. at 276, 105 S.Ct. at 1947 (holding that claims which alleged discrimination are best characterized as personal injury actions). Courts may use the above characterizations to guide them in their quest to find the "most appropriate" or "most analogous" statute of limitations.

As noted by the Eleventh Circuit in *Everett v. Cobb County School Dist.*, 138 F.3d 1407 (11th Cir.1998), most circuits have utilized these characterizations and the guidance from the Supreme Court to adopt a statute of limitations for the ADA

claims, or for claims under the essentially identical Rehabilitation Act, by looking to the state's limitations period for personal injury actions. *Id.* at 1409 citing *Soignier v. American Bd. of Plastic Surgery,* 92 F.3d 547, 551 (7th Cir.1996) cert. denied 519 U.S. 1093, 117 S.Ct. 771, 136 L.Ed.2d 716 (1997); (holding that the district court correctly applied Illinois' two year statute of limitations for personal injuries as the most analogous limitations period of an ADA claim); *Baker v. Bd. of Regents of State of Kansas.,* 991 F.2d 628, 632 (10th Cir.1993) (analogizing Rehabilitation Act claims, which are essentially identical to claims under the ADA, to personal injury claims); *Morse v. Univ. of Vermont,* 973 F.2d 122, 127 (2nd Cir.1992) (concluding that actions under the Rehabilitation Act are governed by the state statute of limitations applicable to personal injury actions); *Hickey v. Irving Indep. School Dist.,* 976 F.2d 980, 982–83 (5th Cir.1992) (finding Plaintiff's claims for discrimination most analogous to personal injury claims). The Sixth Circuit has adopted a view consistent with the above line of cases. The Court determined that in Tennessee, the statute of limitations for the ADA shall be derived from the state statute for a civil action under the federal civil rights statutes. *Williams v. Trevecca Nazarene College,* 162 F.3d 1162 n. 2, 1998 WL 553029 (6th Cir. Aug.17, 1998).

The Fourth Circuit, however, declined to apply the state personal injury statute of limitations to the Rehabilitation Act. The Circuit determined that because the state of Virginia had an anti-discrimination statute that was identical to the Rehabilitation Act but contained a statute of limitations, the anti-discrimination statute was more analogous than the state statute for personal injury actions. *Wolsky v. Medical College of Hampton Roads,* 1 F.3d 222, 225 (4th Cir.1993).

## C. The Statute of Limitations for ADA Claims in Ohio

■ The precedents set by the cases cited above indicate that the most appro-priate statute of limitations for ADA claims brought in Ohio would be found either in the state disability rights statute, Ohio Rev.Code § 4112.02 *et seq.,* or the state personal injury statute, Ohio Rev. Code § 2305.10. Plaintiffs do not contend otherwise. The applicable statute of limitation for Ohio Rev.Code § 4112.02 can be found in Ohio Rev.Code § 4112.99 which provides:

> Whoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief. A civil action commenced pursuant to this section shall be brought within two years after the alleged unlawful discriminatory practice occurred. The period of limitation specified in this section for purposes of a civil action authorized by this section does not affect any other period of limitation that is specified in another section of this chapter for purposes of a distinct civil action authorized by that other section, including, but not limited to, a civil action authorized by division (N) of section 4112.02, division (D) of section 4112.021, division (A) of section 4112.051, or division (B) of section 4112.14 of the Revised Code.

Ohio Rev.Code § 4112.99, as amended by House Bill 350, effective January 27, 1997. As no period of limitation is otherwise specified for disability or handicap discrimination, the two year statute of limitations applies. Likewise, a two year statute of limitations applies to Ohio's personal injury statute. Ohio Rev.Code § 2305.10 states: "An action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose."

The Sixth Circuit has not yet addressed whether Ohio Rev.Code § 4112.99 or Ohio Rev.Code § 2305.10 is more analogous to the ADA. However, as noted above, the Sixth Circuit has addressed the issue under Tennessee law and determined that in the state of Tennessee, the analogous state law is a statutory section which provides a

one-year statute of limitations for civil action under the federal civil rights statute. *Williams v. Trevecca Nazarene College,* 162 F.3d 1162 n. 2, 1998 WL 553029 (6th Cir. Aug.17, 1998). However, this Court's research could not locate a Tennessee statute which was similar to Ohio's broad anti-discrimination statute. Therefore, Tennessee's disability statutes are not sufficiently similar to Ohio's discrimination statute to allow this Court to assume that the Sixth Circuit would find Ohio's personal injury statute to be more closely analogous to the ADA than Ohio's anti-discrimination statute.

Ohio's anti-discrimination statute is not as sweeping as the ADA. The Ohio statute is consolidated into one section and addresses public accommodations, education, housing and employment discrimination on the basis of a handicap. Ohio Rev.Code § 4112.02(G) addresses public accommodations as follows:

> For any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, national origin, handicap, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.

"Public accommodations" is defined as "any inn, restaurant, eating house, barbershop, public conveyance by air, land, or water, theater, store, other place of the sale of merchandise, or any other place of public accommodation or amusement of which the accommodations, advantages, facilities, or privileges are available to the public." Ohio Rev.Code § 4112.01(A)(9). Clearly, the statute does not expressly address curb ramps nor does it specifically exclude them.

The definition of "public accommodation" within the Ohio Revised Code resembles an abbreviated version of the definition of public accommodation within the ADA, 42 U.S.C. § 12181(7). It is worth noting that the ADA covers curb ramps specifically in Title II with respect to public services and addresses public accommodations operated by private entities separately in Title III. *See* Title II, 42 U.S.C. § 12131 *et seq.* (outlining the prohibition against discrimination outside of the employment context for public services) and Title III, 42 U.S.C. § 12181 *et seq.* (regulating public accommodations and services operated by private entitles outside of the employment context). Therefore, it is reasonably likely that Ohio Rev.Code § 4112.02 was not intended to cover public entities or services, but rather public accommodations operated by private entities. This Court's research did not reveal any case law which interpreted Ohio Rev.Code 4112 *et seq.* to regulate the construction of curb ramps or public entities in general. In any event, the statute is clearly not "identical" to the ADA in the same manner that the Virginia Act was "identical" to the Rehabilitation Act, which prompted the Fourth Circuit to break with the conclusions of the other circuits to apply a personal injury statute of limitations in *Wolsky, supra.* Therefore, the most analogous statute to the ADA in Ohio appears to be the state personal injury statute, Ohio Rev.Code § 2305.10.

Although determining the statute most analogous to the ADA may be crucial to ascertain the appropriate statute of limitations period in other states, it is merely an academic discussion in Ohio because both statutes, as amended, provide for a two year limitations period. Therefore, without anticipating further the Sixth Circuit's forthcoming determination on which statute is most analogous to the ADA, the Court will utilize a two year statute of limitations with respect to Plaintiffs' claims.

### D. A Present Violation of the ADA

Plaintiffs initially attempt to avoid the statute of limitations altogether by asserting that Defendants are committing a present violation of the ADA. Plaintiffs

contend that despite the fact that several intersections were altered more than two years prior to the commencement of litigation, these intersections violate the ADA today and are actionable as present violations of the Act. Plaintiffs claim that to hold otherwise would require disabled individuals to scour the newspaper for evidence of recently altered public facilities, visit each altered facility and, if necessary, challenge its accessibility within two years of the project's completion. Plaintiffs maintain that such an application of the statute of limitations would significantly hinder the ADA's enforcement and frustrate its purpose.

Although Plaintiff's are correct in contending that a two year statute of limitations for violations of the ADA could create a difficult issue of discovery with respect to noncompliant curb ramps, the law on the matter is clear. The general rule is "statutes of limitations ... are triggered at the time the alleged discriminatory act occurred." *E.E.O.C. v. Penton Industrial Pub. Co., Inc.*, 851 F.2d 835, 837–38 (6th Cir.1988). Of course, "the limitations period is measured beginning only from the time when the plaintiff knew or should have known of the injury." *Stewart v. CPC International, Inc.*, 679 F.2d 117, 120 (7th Cir.1982). However, it is important to note that statutes of limitations **"begin to run in response to the discriminatory act themselves, not in response to the continuing effects of those acts."** *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir.1991) (emphasis added) (discussing the continuing violation theory). *See also Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (finding that it is insufficient for a Plaintiff to allege that his termination gives present effect to the past illegal act and therefore perpetuates the consequences of forbidden discrimination); *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir.1979) (holding that "[t]he proper focus is upon the time of the discriminatory acts, not upon the time at

which the consequences of the acts became most painful").

Therefore, the fact that the curb ramps in question are in undisputed violation of the ADA and that disabled individuals still suffer the ramifications of having noncompliant ramps scattered throughout the community does not create a present violation of the ADA if the ramps were completely constructed and in plain view two years prior to the commencement of the lawsuit. However, doctrines such as the continuing violation theory exist to usurp the statute of limitations and address situations where wrongful conduct is ongoing. The continuing violation theory's application to Plaintiffs' situation is addressed below.

*E. Defining a Continuing Violation Under the ADA*

As an alternative to a finding that Defendants are committing a present violation of the ADA, Plaintiffs urge the Court to find that Defendants' actions represent a "continuing violation" of the ADA. Such a finding would allow Plaintiffs to bring an action for violations dating back to 1992 (the effective date of the ADA) despite the applicable two year statute of limitations. "Statutes of limitations ... are intended to keep stale claims out of the courts.... Where the challenged violation is a continuing one, the staleness concern disappears". *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380, 102 S.Ct. 1114, 1125, 71 L.Ed.2d 214 (1982).

The continuing violation theory, first articulated by the Supreme Court in *Havens Realty Corp. v. Coleman*, held that discriminatory incidents which occur beyond the limitations period are actionable "where a plaintiff ... challenges not just one incident of [unlawful] conduct ... but an unlawful practice that continues into the limitations period, [in such cases] the complaint is timely when it is filed within [the statute of limitations period] of the last asserted occurrence of that practice." *Id.* (footnote

omitted), *cited in Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. of Educ.*, 926 F.2d 505, 510–11 (6th Cir.) cert. denied., 501 U.S. 1261, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991). Thus, where there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period. *Hull*, 926 F.2d at 511, *Held v. Gulf Oil Co.*, 684 F.2d 427, 430 (6th Cir.1982).

*Haithcock v. Frank*, 958 F.2d 671, 677–78 (6th Cir.1992).

■ Typically courts view continuing violations as falling into two categories of "narrowly limited exceptions" to the usual rule that "statutes of limitations ... are triggered at the time the alleged discriminatory act occurred." *E.E.O.C. v. Penton Industrial Pub. Co., Inc.*, 851 F.2d 835, 837–38 (6th Cir.1988). "The first category [of continuing violation] arises where there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation; that is, where an employer continues presently to impose disparate work assignments or pay rates between similarly situated employee groups." *Id.* at 838. As the Court in *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir.1991) explained:

> The rationale underlying this category is that the employer commits an illegal act, such as giving unequal pay for equal work, each time the employer dispenses the unequal pay. *Hall v. Ledex, Inc.*, 669 F.2d 397, 398 (6th Cir.1982). This result follows from the fact that paying unequal wages for equal work is in itself the forbidden discriminatory act. It is irrelevant that the employer has committed the same illegal act at other times prior to the beginning of the relevant limitations period. *See Bazemore v. Friday*, 478 U.S. 385, 394–95, 106 S.Ct. 3000, 3005–06, 92 L.Ed.2d 315 (1986). Of course, this category requires a "current" as well as "continuing" violation: at least one of the for-

bidden discriminatory acts must have occurred within the relevant limitations period. *Id.* Thus limitations periods begin to run in response to discriminatory acts themselves, not in response to the continuing effects of past discriminatory acts. *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980); *United Air Lines v. Evans*, 431 U.S. 553, 557, 97 S.Ct. 1885, 1888, 52 L.Ed.2d 571 (1977).

■ The second category of continuing violations involves a policy of discriminatory actions. This situation arises where there has occurred "a longstanding and demonstrable policy of discrimination." *E.E.O.C. v. Penton Ind. Publishing Co., Inc.*, 851 F.2d 835, 838 (6th Cir.1988). Unrelated incidents of discrimination will not suffice to invoke this exception; rather, there must be a continuing "over-arching policy of discrimination." *Janikowski v. Bendix Corp.*, 823 F.2d 945, 948 (6th Cir. 1987). In general, "[r]epeated requests for further relief from a prior act of discrimination will not set the time limitations running anew." *Id.* at 949; *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir.1991). Therefore, in order to survive summary judgment, Plaintiff must assert facts which indicate that the City of Toledo committed an illegal act when it repeatedly failed to construct ADA compliant curb ramps or that the City practiced an "over-arching policy of discrimination" when it continually allowed curb ramps to be installed which were not in compliance with the ADA.

■ The Sixth Circuit has adopted a three-part inquiry for determining whether a continuing violation exists. First, a court must determine whether the defendant's wrongful conduct continued after the precipitating event that began the pattern. Second, the injury to the plaintiff must continue to accrue after the event. Lastly, further injury to the plaintiffs must have been avoidable if the defendants had at any time ceased their wrongful conduct. *Tolbert v. Ohio Dept. of Transp.*, 172 F.3d

934, 939 (6th Cir.1999) (finding no continuing violation on the basis of racial discrimination in the state's allocation of sound barriers along the highway because there was no pattern of discrimination or continuing course of conduct) citing *Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir.1997).

■ Prong one is fulfilled because the City first began failing to comply with the ADA following its enactment in 1992 when various curb ramps were improperly constructed. Subsequently, the City has built several noncompliant curb ramps dating up until the filing of this lawsuit. Prong two is fulfilled because it is undisputed that the City repeatedly failed to comply with the ADA; thus Plaintiffs' injuries continued to accrue. The numerous construction of non-conforming curb ramps did not amount to individual, unrelated discreet events; the construction resulted in an injury to Plaintiffs which continued to increase as their access to sidewalks was further limited. Finally, additional injury to the Plaintiffs would have been avoidable if the City complied with ADA regulations in its construction of the curb ramps because each correctly constructed curb ramp would allow the Plaintiffs greater accessibility. As curb ramps are constructed on a continual basis, Plaintiffs are not attempting to rectify "passive inaction" of a "continuing ill effect" and thus a continuing violation exists. *See Tolbert*, 172 F.3d at 940. It therefore appears that Plaintiffs fulfill the three-part inquiry outlined in *Tolbert*.

Plaintiff also cites *Schonfeld v. City of Carlsbad*, 978 F.Supp. 1329 (S.D.Cal.1997) for the proposition that a city's continual failure to make buildings and sidewalks accessible constitutes a continuing violation of the ADA. In *Schonfeld*, the Plaintiffs were disabled residents of the City. The Court stated:

> The Court declines to accept defendant's contention that an ADA plaintiff's claims accrue on precisely the date on which a public entity's transition plan and self-evaluation are due under the ADA. Furthermore, even applying California's one-year statute of limitations for personal injury actions, plaintiffs' claims are not time-barred. Plaintiffs' claims of inadequate access and discrimination arise out of factual allegations—beginning on January 26, 1995 and continuing afterward—that they were allegedly "excluded from participation in or [were] denied the benefits of the services, programs or activities of" the defendant or were "subjected to discrimination" by the defendant. 42 U.S.C. § 12132. Plaintiffs filed their original complaint, based on the allegedly continuing ADA violations, on May 10, 1996. Thus, the Court finds that plaintiffs' suit was timely filed. *See Independent Housing Services v. Fillmore Ctr.*, 840 F.Supp. 1328, 1346 (N.D.Cal., 1993) (maintenance of a discriminatory system before and during the limitations period is a continuing violation).

*Id.* at 1333. *See also Green v. Los Angeles County Superintendent of Schools.*, 883 F.2d 1472, 1480–81 (9th Cir.1989) (determining that the maintenance of a discriminatory system both before and during the limitations period is a continuing violation). The Court finds the reasoning in *Schonfeld* persuasive.

The issue of whether the construction of curb ramps which fail to adhere to the ADA may constitute a continuing violation is somewhat arduous. Clearly, there is a distinction between a situation involving a gender or racial based "pattern" of discriminatory conduct where wrongful intent is apparent and numerous separate curb cut installations, each of which are at different sites with different characteristics, completed by different contractors and which are likely the result of the City's lack of oversight rather than discriminatory intent. However, although a discriminatory pattern or practice is less apparent when one is dealing with the oversight of construction rather than a racially discriminatory hiring policy, the failure to super-

vise various contractors' compliance with the ADA can amount to a discriminatory system.

It is not necessary to show that the City *specifically intended* to discriminate against disabled individuals; the ADA imposes a duty upon the City to comply with its provisions and accommodate persons with disabilities. The statute provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. An affirmative act of intentional discrimination, although generally integral to a claim of race or gender discrimination, is not necessary under the ADA. The City of Toledo has breached its duty under the statute; the City's benign neglect in the oversight of curb ramp construction creates an adverse impact on disabled individuals who live or frequently travel within Toledo. Therefore, if the City was engaged in a discriminatory practice by failing to oversee the contractors, even if they did not affirmatively intend to discriminate, and at least one of the ramps was installed within the statutory two year period (which is undisputed), the statute of limitations will not bar the claims because the City's actions constitutes a continuing violation.

## CONCLUSION

For the foregoing reasons, the municipal Defendants' motion for partial summary judgment is denied. (Doc. No. 30).

IT IS SO ORDERED.