OPINION
{¶ 1} Plaintiff-appellant, Ohio Civil Rights Commission ("OCRC"), appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants-appellees, Triangle Real Estate Services, Inc. ("TRESI"), Village Communities Corporation ("VCC"), John Eyman, and Meacham Apel Architects, Inc. ("MA"). Because the statute of limitations bars OCRC's unlawful discriminatory practice claims under R.C. 4112.02(H), we affirm.
 {¶ 2} Defendants designed and constructed Cameron Ridge Luxury Apartments ("Cameron Ridge") in Gahanna, Ohio, an apartment complex consisting of ten separate apartment buildings. The City of Gahanna issued a Certificate of Use Occupancy for each apartment building, the first on November 14, 2001 and the last on April 27, 2002. The certificates indicate each building's completion and certify that each "building conforms to the applicable provisions of the OBBC [Ohio Basic Building Code] and Chapters 3781 and 3791 of the Ohio Revised Code when occupied and used in accordance with the conditions of this approval."
 {¶ 3} On October 1, 2003, Fair Housing Contact Service ("FHCS") filed a charge with OCRC alleging defendants engaged in unlawful discriminatory practices in violation of R.C. 4112.02(H)(20) and4112.02(H)(22) when they designed and constructed Cameron Ridge. OCRC conducted a preliminary investigation of the charge and found it probable that defendants engaged in the charged practices. Notably, the inspection revealed (1) orbital handles on all doors, (2) primary entrance door thresholds higher than three-fourths of an inch, and (3) thermostats placed higher than 48 inches. After failed conciliation efforts, OCRC filed an administrative complaint against defendants. *Page 3 
Defendants elected out of the administrative hearing process pursuant to R.C. 4112.051(A)(2), and the Attorney General of Ohio, on behalf of OCRC, filed a complaint against defendants in the common pleas court.
 {¶ 4} After defendants filed their separate answers, OCRC voluntarily dismissed Eyman and MA; the remaining defendants, TRESI and VCC, filed a joint motion for summary judgment. In their motion, defendants argued the statute of limitations barred OCRC's unlawful discriminatory practice claims because FHCS's charge was untimely filed with OCRC. OCRC's memorandum in opposition asserted that its charges of discriminatory design and construction were timely filed pursuant to the continuing violation and discovery doctrines.
 {¶ 5} The trial court found the allegedly discriminatory design and construction practices ceased to exist when defendants completed construction of Cameron Ridge, signified by the date Gahanna issued the last certificate of occupancy. Unpersuaded that the case involved a continuing violation or justified applying the discovery rule to the statute of limitations, the trial court granted summary judgment in favor of defendants, finding OCRC's claims time-barred. OCRC appeals, assigning three errors:
 First Assignment of Error: The State of Ohio is not subject to a statute of limitations, absent an express statutory application, and the trial court erred by applying the limitations period in R.C. 4112.05(B)(1) against the Commission.
 Second Assignment of Error: If the one-year period for filing charges with the Commission — R.C. 4112.05(B)(1) — bars an action by the Commission to remedy discrimination, the discovery rule, the continuing violation theory, and public policy favor extending the statute.
 Third Assignment of Error: The trial court erred by ruling that Ohio Adm. Code 4112-3-01(C) requires a person to *Page 4 
specifically plead the continuing violation theory when filing a charge with the Ohio Civil Rights Commission.
 {¶ 6} OCRC's three assignments of error contend the trial court erred by granting defendants' motion for summary judgment. An appellate court's review of summary judgment is conducted under a de novo review.Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704,711. We apply the same standard as the trial court and conduct an independent review, without deference to the trial court's determination. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107; Brown, at 711. We must affirm the trial court's judgment if any of the grounds the movant raised before the trial court support the judgment. Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 41-42.
 {¶ 7} Summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66.
I. First Assignment of Error {¶ 8} OCRC's first assignment of error claims the trial court erred by applying the R.C. 4112.05(B)(1) limitation period to OCRC's unlawful discriminatory practice claims under R.C. 4112.02(H). R.C. 4112.05(B)(1) provides, in pertinent part, that "[a]ny person may file a charge with the commission alleging that another person has engaged or is engaging in an unlawful discriminatory practice. * * * In the case of a charge alleging an *Page 5 
unlawful discriminatory practice described under division (H) of section 4112.02 of the Revised Code, the charge shall be in writing and under oath and shall be filed with the commission within one year after the alleged unlawful discriminatory practice was committed."
 {¶ 9} The trial court found that because defendants designed and constructed Cameron Ridge no later than April 27, 2002, the date the city of Gahanna issued the last certificate of use and occupancy, FHCS's charge of October 1, 2003 was filed over one year after the alleged discriminatory practice was committed. The trial court therefore concluded the statute of limitations contained in R.C. 4112.05(B)(1) barred OCRC's unlawful discriminatory practices claims.
 {¶ 10} OCRC contends that as a political subdivision of the state (1) OCRC is not bound by the generally worded statute of limitations set forth in R.C. 4112.05(B)(1), and (2) R.C. 4112.05(B)(1) does not prohibit OCRC from seeking injunctive relief outside the limitation period. In sum, OCRC maintains it is immune from the effects of the statute of limitations and its case thus should proceed on the merits.
 {¶ 11} A review of the record, however, reveals that OCRC did not raise either argument in the trial court; consequently, the trial court did not address or rule upon them. Well-settled common law dictates that issues not initially raised in the trial court may not be raised for the first time on appeal. Porter Drywall, Inc. v. Olentangy Building Dev.Co. (Feb. 24, 2000), Franklin App. No. 99AP-306; Stevens Skin Softener,Inc. v. Revco Drug Store, Inc. (1997), 121 Ohio App.3d 212, 218;QualChoice, Inc. v. Brotherhood Ins. Co., Stark App. No. 06CA00020,2007-Ohio-226, ¶ 10. *Page 6 
 {¶ 12} OCRC nevertheless contends the arguments it advances for the first time on appeal are consistent with the arguments asserted in the trial court to explain why OCRC's claims were timely. OCRC's memorandum in opposition to defendants' motion for summary judgment contended its complaint was timely because (1) the continuing violation doctrine renews the statute of limitations period with each new day of a continuing violation, and (2) the discovery rule tolls the statute of limitations until the charge of discrimination is discovered. In essence, OCRC challenged the statute of limitations' range, not its application. Although OCRC's immunity and injunction arguments address the same broad issue of whether the statute of limitations bars OCRC's unlawful discriminatory practice claims, they impermissibly present for the first time before the appellate court new legal theories regarding the applicability of the statute of limitations. Ohio Farmers Ins. Co.v. Estate of Brace (1997), 116 Ohio App.3d 395, 401 (stating "[a] party may not assert a new legal theory for the first time before an appellate court").
 {¶ 13} Even assuming OCRC properly raised its immunity and injunction arguments before the trial court, we would find them unpersuasive on the facts of this case. Relying on State Dept. of Transp. v. Sullivan
(1988), 38 Ohio St.3d 137, 140, OCRC initially argues R.C.4112.05(B)(1)'s statute of limitations does not apply to it as a political subdivision of the state.
 {¶ 14} In Sullivan, the court addressed whether the two-year statute of limitations for negligence applied to a negligence claim the Ohio Department of Transportation ("ODOT") filed to collect for damages Sullivan caused to an ODOT guardrail. The statute at issue, R.C.2305.10, provided that "an action for bodily injury or injuring personal *Page 7 
property shall be brought within two years after the cause of action accrues." After examining the historic reasoning behind a state's exemption from statutes of limitations, the court held "that the state of Ohio, absent express statutory provisions to the contrary, is exempt from the operation of a generally worded statute of limitations." Because R.C. 2305.10 is not expressly applicable to the state, the court found ODOT's negligence action was not time-barred.
 {¶ 15} Here, unlike Sullivan, OCRC is not pursuing its own claim but that of FHCS. Moreover, unlike R.C. 2305.10, R.C. 4112.05(B)(1) specifically names OCRC and requires that a charge be filed with OCRC "within one year after the alleged unlawful discriminatory practice was committed." Because the statute of limitations contained in R.C.4112.05(B)(1) is specifically worded and expressly governs claims made to OCRC on which OCRC then may act, OCRC is subject to its limitation period. See, e.g., Devincens v. Henry (Aug. 9, 1999), Stark App. No. 1999CA00094 (finding R.C. 2107.76 specific and therefore applicable to the state).
 {¶ 16} OCRC next contends R.C. 4112.05(B)(1) does not prohibit it from seeking injunctive relief outside the limitation period. In support of its contentions, OCRC notes that federal courts consistently recognize the government's ability to seek injunctive relief in housing accessibility cases despite the lapse of a statute of limitations period. In support, OCRC cites U.S. v. Taigen Sons, Inc. (D.Idaho 2003), 303 F.Supp.2d 1129, U.S. v. Pacific Northwest Elec, Inc. (D.Idaho 2003), No. CV-01-019-S-BLW (Memorandum Decision), and U.S. v. HallmarkHomes, Inc. (D.Idaho 2003), No. CV01-432-N-EJL (Order). OCRC thus contends its action for injunctive relief should proceed on the merits. *Page 8 
 {¶ 17} R.C. 4112.05 provides OCRC three ways to obtain injunctive relief when a charge alleges an unlawful discriminatory practice under R.C. 4112.02(H): (1) R.C. 4112.05(B)(3)(a)(iii) directs OCRC to conduct a preliminary investigation and gives OCRC the discretion to initiate a complaint and refer it to the attorney general with a recommendation to seek an immediate temporary or permanent injunction; (2) R.C.4112.05(B)(3)(d) allows OCRC to seek a temporary or permanent injunction prior to the complaint being issued or referred to the attorney general and prior to endeavoring to eliminate the alleged discrimination by informal methods of conference, conciliation, and persuasion; and (3) R.C. 4112.05(B)(5) through 4112.051(A)(2) enable OCRC to file a complaint in the common pleas court requesting injunctive relief as a form of remedy. Although R.C. 4112.05(B) does not so directly state, each injunction option under R.C. 4112.05 is subject to the one-year statute of limitations contained in R.C. 4112.05(B)(1).
 {¶ 18} More specifically, OCRC's first injunction option occurs under R.C. 4112.05(B)(3)(a) when a charge is filed under R.C. 4112.05(B)(1) alleging an unlawful discriminatory practice described in R.C.4112.02(H). As a result, OCRC's power to seek an injunction derives from, and therefore is subject to, a claim being filed with OCRC in compliance with the statute of limitations contained in R.C.4112.05(B)(1). Similarly, OCRC's power to seek an injunction under R.C.4112.05(B)(3)(d) prior to the issuance of a complaint is based upon an R.C. 4112.05(B)(1) discriminatory practice claim under R.C. 4112.02(H). Because OCRC's authority to file a complaint alleging unlawful discriminatory practice in violation of R.C. 4112.02(H) derives from R.C. 4112.05(B)(1), OCRC must pursue its second injunction option based on a claim filed with OCRC before the expiration of the statute of limitations contained in R.C. 4112.05(B)(1). Lastly, although *Page 9 
OCRC may request injunctive relief when it files a complaint in the common pleas court pursuant to R.C. 4112.051(A)(2), the charge FHCS filed under R.C. 4112.05(B)(1) authorizes OCRC to initiate its complaint and therefore determines the applicable statute of limitations. SeePeterson v. Teodosio (1973), 34 Ohio St.2d 161, 172 (holding that statutes of limitation attach to causes of action, not the remedial form in which the action is brought). In sum, a request for injunctive relief does not abrogate the R.C. 4112.05(B)(1) statute of limitations when a charge is filed and a complaint is issued pursuant to R.C.4112.05(B)(1).
 {¶ 19} The federal cases OCRC cites do not address the applicability of the statute of limitations to a request for injunctive relief, but examine doctrines that extend the applicable statute of limitations, both to prevent future violations and to remove "the lingering effects of any past violations * * *." Pacific Northwest, supra; Taigen Sons, supra, at 1148; Hallmark Homes, supra. Because the cases analyze issues that arise after finding a statute of limitations applicable, they do not determine whether OCRC's claim for injunctive relief is subject to R.C. 4112.05(B)(1)'s statute of limitations. The issues addressed in the federal cases OCRC cites will be discussed under OCRC's second assignment of error.
 {¶ 20} For the foregoing reasons, OCRC's first assignment of error is overruled.
II. Second Assignment of Error {¶ 21} OCRC's second assignment of error contends the trial court erred by failing to extend the applicable statute of limitations pursuant to (1) the continuing violation theory, (2) the discovery rule, or (3) public policy considerations. OCRC first claims Cameron Ridge's discriminatory design and construction continually violates R.C. *Page 10 4112.02(H)(20) and (22) and thus renews the statute of limitations period each day the violation continues to exist. The continuing violation theory, recognized in Ohio Adm. Code 4112-3-01(D)(2), states that "[i]n cases of recurring or continuing violations, the filing period begins to run anew with each new discriminatory act or with each new day of the continuing violation." A continuing violation is defined as "a violation of Chapter 4112 of the Revised Code that has no definite ending date." Ohio Adm. Code 4112-1-01(I). We appropriately look to the definition's origin and subsequent application in federal case law in our attempt to interpret Ohio administrative provisions. Kozma v. AEPEnergy Services, Inc., Franklin App. No. 04AP-643, 2005-Ohio-1157, ¶ 30
(finding examination of analogous federal statutes and case law to be appropriate when interpreting R.C. Chapter 4112); Wooten v. City ofColumbus (1993), 91 Ohio App.3d 326, 334; Beauchamp v. CompuServe,Inc. (1998), 126 Ohio App.3d 17, 22.
 {¶ 22} The United States Supreme Court adopted the continuing violation theory in an action brought under the Fair Housing Act ("FHA"), recognizing that a complaint alleging a continuing illegal practice, rather than an isolated incident of wrongful conduct, is timely when filed within the statute of limitations period calculated from the last occurrence of the illegal practice. Havens Realty Corp. v.Coleman (1982), 455 U.S. 363, 380-381. The continuing violation theory has been applied to cases where (1) a longstanding and demonstrable policy of discrimination exists, or (2) some evidence of present discriminatory activity giving rise to a claim of a continuing violation exists. Because OCRC's unlawful discriminatory practice claims alleged discrete violations at Cameron Ridge, not an over-arching policy of discrimination, we examine OCRC's argument under the second category of continuing violation. Thus, where OCRC finds an *Page 11 
ongoing, continuous series of discriminatory acts, those acts may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period. Deck v. City of Toledo (N.D.Ohio 1999), 56 F.Supp.2d 886, 892.
 {¶ 23} In Havens, even though four of the five racial steering incidents occurred outside the FHA statute of limitations, the Supreme Court found all five incidents timely under the continuing violation theory, because the violation that occurred within the statute of limitations was manifested in the number of incidents that occurred outside the statute of limitations. Id. at 380. Requiring that at least one of the forbidden discriminatory acts occurs within the relevant limitations period ensures the limitation period begins to run in response to discriminatory acts themselves, not in response to the continuing effects of past discrimination. Deck, at 893; Moseke v.Miller (E.D.Vir. 2002), 202 F.Supp.2d 492, 506; United Air Lines v.Evans (1977), 431 U.S. 553, 557; Delaware State College v. Ricks (1980),449 U.S. 250, 258.
 {¶ 24} Similarly, in Moseke, a case applying the federal counterpart to Ohio's disability discrimination statute and most resembling the facts presented here, the plaintiffs alleged disability discrimination violations under the FHA: non-compliance with the FHA design and construction statutory provision and the FHA reasonable accommodation provision. The lead plaintiff, Moseke, sought an apartment at one of the defendants' three developments, but after inspecting the exterior of the defendants' premises, she determined the premises would not facilitate the use of her motorized scooter. Moseke subsequently filed a complaint with a nonprofit civil rights advocacy group that, in turn, inspected the developments and observed exterior and interior violations, including environmental controls that were positioned too high and doorways *Page 12 
that were too narrow. Id. at 495. After exchanging pleadings, the defendants moved to dismiss the plaintiffs' complaint because the construction and design claim was not timely filed within the FHA's two-year statute of limitations period. The plaintiffs countered by contending their complaint was timely pursuant to the continuing violation theory.
 {¶ 25} Because the last FHA non-compliant condominium development at issue in Moseke was constructed more than two years before the suit commenced, the court rejected plaintiffs' continuing violation argument, explaining that "the existence of buildings with inaccessible features is a result or effect of Defendants' prior acts of designing and constructing FHA non-compliant buildings not a continuing violation manifesting itself in a series of incidents." Id. at 507. The court further clarified: "holding that a non-compliant FHA building constitutes a continuing violation, * * * eviscerates the statute of limitations with respect to design and construction claims. If the mere existence of a FHA non-compliant building is a continuing violation under the FHA then there is no limitations period on a disability discrimination claim involving design and construction." Id. at 508.
 {¶ 26} Here, OCRC's complaint alleged defendant violated R.C.4112.02(H)(20) and (22) by unlawfully designing and constructing Cameron Ridge. As in Moseke, defendants designed and constructed Cameron Ridge more than a year before FHCS filed a charge with OCRC. Defendants therefore committed the alleged discriminatory act of designing and constructing outside the statute of limitations period. FHCS and OCRC failed to allege defendants committed another unlawful discriminatory act, or repeated some discriminatory act, of design and construction within the one-year period preceding *Page 13 
the date FHCS filed its charge. Absent such allegations, the continuing violation theory does not apply to OCRC's R.C. 4112.02(H)(20) and4112.02(H)(22) claims.
 {¶ 27} OCRC nevertheless argues for the first time on appeal that its R.C. 4112.02(H)(20) claim alleges a separate and distinct form of discrimination from its R.C. 4112.02(H)(22) claim. OCRC correctly notes that R.C. 4112.02(H)(22) specifically describes a failure to design and construct, while R.C. 4112.02(H)(20) more broadly references a failure to comply with the standards and rules adopted under R.C. 3781.111. OCRC argues that even if defendants' design and construction deficiencies at Cameron Ridge are not a continuing violation under R.C. 4112.02(H)(22), defendants' failure to comply with the accessibility standards the Board of Building Standards adopted pursuant to R.C. 3781.111 violates R.C.4112.02(H)(20) each day the inaccessible feature is not brought into compliance.
 {¶ 28} The Board of Building Standards adopted an entire chapter of standards and rules pertaining to the accessibility for physically disabled persons, any section of which can form the basis for an R.C.4112.02(H)(20) claim alleging failure to comply with such standards and rules. OCRC's complaint sets forth "APPLICABLE STATUTORY PROVISIONS," citing R.C. 4112.02(H)(20). OCRC's complaint further cites what OCRC apparently intended to be a reference to Ohio Adm. Code 4101:1-11-01.2, which states that "[b]uildings and facilities shall be designed and constructed to be accessible in accordance with this code and ADAAG." The first and only count of the complaint does not allege a failure to comply with general building standards, but instead specifically alleges in paragraph 17 that defendants "designed and/or constructed the subject covered multifamily dwellings * * *." The following paragraph asserts defendants *Page 14 
"designed and/or constructed dwelling units in such a manner * * * as to restrict and/or deny the full accessibility and enjoyment * * * for persons with disabilities. More specifically, the covered multifamily dwellings were designed and constructed with" various deficiencies in inaccessible routes, handles, and thermostats.
 {¶ 29} Even if we combine the various statutory and administrative code sections OCRC cites and apply them to the allegations of the only count of the complaint, we are unable to construe OCRC's R.C.4112.02(H)(20) claim as more than a failure to design and construct per the Ohio Board of Building Standards. Indeed, were we in doubt about the nature of OCRC's allegations, its memorandum in opposition to defendants' motion for summary judgment resolves the doubt by exclusively advocating for the application of the continuing violation theory to its discriminatory design and construction claims.
 {¶ 30} Because OCRC failed to properly plead the alternative form of discrimination and did not raise the issue before the trial court, the trial court did not address nor rule upon the issue. Issues not initially raised in the trial court may not be raised for the first time on appeal. Porter Drywall, Inc., supra. The continuing violation theory thus does not apply to OCRC's R.C. 4112.02(H)(20) claim.
 {¶ 31} OCRC next contends the trial court erred by failing to apply the discovery rule to toll the applicable statute of limitations. Depending on the claim and the applicable statute, the discovery rule may toll the governing statute of limitations until the plaintiff discovers, or in the exercise of reasonable care should have discovered, the complained-of injury if the injury does not manifest itself immediately. Investors REIT One v. Jacobs (1989), 46 Ohio St.3d 176,180. The applicability of the discovery rule therefore is *Page 15 
dependent on (1) the wording of the relevant statute of limitations, and (2) an injury that does not manifest itself immediately.
 {¶ 32} When the legislature uses ambiguous or vague terms, and thus fails to define the commencement of the limitation period governing an action, the judiciary may determine when the statute of limitations begins to run. See O'Stricker v. Jim Walter Corp. (1983),4 Ohio St.3d 84. In such situations, a court may apply the discovery rule to toll the start of the limitations period. Harris v. Liston (1999),86 Ohio St.3d 203, 206. If, however, the relevant statutory language clearly and unambiguously triggers the limitations period, the court must enforce the statute as written. Bernardini v. Conneaut Area City School Dist.Bd. of Edn. (1979), 58 Ohio St.2d 1, 4.
 {¶ 33} Here, R.C. 4112.05(B)(1) states that "the charge * * * shall be filed with [OCRC] within one year after the alleged unlawful discriminatory practice was committed." (Emphasis added.) Unlike statutes containing an ambiguous triggering event, such as when a cause of action "accrues" or "arises," R.C. 4112.05(B)(1) specifies the statute of limitations begins to run upon the commission of the allegedly unlawful discriminatory practice. Because the statute of limitations is plain on its face and unambiguously defines the event triggering the start of the limitations period, this court must enforce the statute as written. The trial court thus did not err by failing to apply the discovery rule to the applicable statute of limitations.
 {¶ 34} Moreover, even if this court were to ignore the clear statutory language, the discovery rule would not toll the applicable statute of limitations. The discovery rule was designed to prevent unjust results when the wrongful act does not immediately result in injury or damage, such as in medical malpractice cases, legal malpractice cases, *Page 16 
exposure to asbestos, sexual abuse of children, wrongful adoption, fraud or conversion, negligent credentialing of a physician, or a wrongful death action where the victim or the victim's survivors are not immediately aware that a wrongful act has occurred. See Harris, supra, at 205-206 (listing types of cases applying the discovery rule). Here, however, the harm that defendants allegedly caused in the design and construction of Cameron Ridge was readily apparent upon the building's completion. Because nothing prevented FHCS or OCRC from discovering the allegedly discriminatory practice at the time Cameron Ridge was constructed, FHCS or OCRC, with reasonable diligence, could have discovered the alleged violations within one year after the building was constructed. The applicable statute of limitations therefore began to run upon the building's completion. See, e.g., Jones v. Hughey,153 Ohio App.3d 314, 2003-Ohio-3184.
 {¶ 35} OCRC finally argues that public policy considerations justify applying the continuing violation theory and discovery rule to toll the applicable statute of limitations. Given OCRC's limited resources to directly investigate housing discrimination, OCRC contends that, without tolling, the statute of limitations will significantly inhibit the government's ability to redress housing accessibility issues. OCRC concludes this court should ensure adequate accessible housing for Ohio's disabled citizens even if it requires builders to comply with untimely accessibility claims.
 {¶ 36} Our conclusion that the continuing violation theory and discovery rule do not extend the applicable statute of limitations in the context of this case does not frustrate the underlying policy of Ohio's disability discrimination statutes because this court's decision does not foreclose OCRC or another individual from pursuing an alternative claim or theory to redress defendants' allegedly unlawful discriminatory practice. Although *Page 17 
the statutory language of R.C. 4112.05(B)(1) prevents the discovery rule from tolling the applicable statute of limitations, OCRC may be able to pursue continuing violation theory, for example, under (1) an R.C.4112.02(H)(20) claim brought pursuant to standard or rule, other than design or construction, that the Board of Building Standards adopted, or (2) a claim brought pursuant to R.C. 4112.02(H)(1) (refusing to make available housing accommodations because of handicap). Moreover, our decision does not prevent an aggrieved party from seeking to remedy the alleged unlawful discriminatory practice pursuant to R.C. 4112.02(H)(1) or (18). Because OCRC or another aggrieved individual may seek legal redress through other avenues at an appropriate time, OCRC's public policy argument is without merit. For the foregoing reasons, OCRC's second assignment of error is overruled.
 {¶ 37} Having overruled OCRC's first and second assignments of error, rendering moot OCRC's third assignment of error, we affirm the judgment of the trial court.
Judgment affirmed.
 McGRATH and WHITESIDE, JJ., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1